Frank **FERRARA**, M.D.

v.

**ALLENTOWN PHYSICIAN ANESTHE-SIA ASSOCIATES, INC.**

Civ. A. No. 88–1537.

United States District Court, E.D. Pennsylvania, Civil Division.

March 28, 1989.

E. Laurence Kates, Philadelphia, Pa., for plaintiff.

Oldrich Foucek, III, Allentown, Pa., for defendant.

## ADJUDICATION

VAN ANTWERPEN, District Judge.

In the instant matter, plaintiff seeks to recover money allegedly owed him under employee pension and profit sharing plans. From the non-jury trial of February 24, 1989, the parties stipulate to the following undisputed facts:

1. This court has jurisdiction under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1982), as plaintiff's cause of action arises out of his claim for certain monies which he alleges Allentown Physician Anesthesia Associates, Inc. ("APAA") owes him under its employee pension plan ("pension plan") and profit sharing plan and trust ("profit sharing plan").

2. APAA is a Pennsylvania Professional Corporation organized on March 1, 1973 to provide anesthesia services.

3. Effective March 1, 1973, APAA adopted pension and profit sharing plans.

4. On March 1, 1976, in order to comply with ERISA, APAA adopted amended and restated pension and profit sharing plans. A copy of the 1976 amended and restated pension plan is attached as part of Exhibit "B" to plaintiff's complaint. A copy of the 1976 amended and restated profit sharing plan is attached to the stipulated facts as Exhibit "A".

5. APAA applied to the U.S. Department of the Treasury, Internal Revenue Service ("IRS") for a determination that the 1976 amendments to the plans complied with ERISA.

6. In August, 1977, the IRS issued favorable determination letters concerning both APAA's pension and profit sharing plans. Such letters resulted in the qualification of the plans under § 401(a) of the Internal Revenue Code.

7. In November, 1977, and pursuant to the requirements of ERISA, APAA caused to be prepared and distributed to its eligible employees summary plan descriptions

for its pension and profit sharing plans. A copy of the summary plan description for APAA's pension plan is attached to the stipulated facts as Exhibit "B", and a copy of the summary plan description for APAA's profit sharing plan is attached hereto as Exhibit "C".

8. On February 20, 1978, APAA adopted amendments to both plans to liberalize their vesting schedules. A copy of amendment no. 2 to APAA's pension plan is attached as part of Exhibit "B" to plaintiff's complaint, and a copy of amendment no. 2 to APAA's profit sharing plan is attached as part of Exhibit "C" to plaintiff's complaint.

9. Thus, the 1976 Plans, as amended in 1978, provided for one hundred percent (100%) vesting after completion of three years of service and fifty percent (50%) vesting after two years of service, but less than three years of service.

10. Prior to April 14, 1982, APAA began to have discussions with plaintiff, Frank Ferrara, M.D. ("Dr. Ferrara"), concerning possible employment of Dr. Ferrara.

11. On April 14, 1982, APAA sent Dr. Ferrara a letter, a copy of which is attached to the stipulated facts as Exhibit "D", outlining certain benefits of his prospective employment. Specifically, with regard to the pension and profit sharing plans, the letter provided that:

Your annual salary will be $75,000.00 until September 1, 1983. On that date you will start participating in our Pension and Profit Sharing Plans, with the percentage of contribution by the employer being equal to that of all other full time employees. At the end of three years of participation, your share will become fully vested.

12. Dr. Ferrara became employed by APAA on August 1, 1982, under and pursuant to the terms of a written employment agreement dated June 15, 1982. A copy of that employment agreement is attached as Exhibit "A" to plaintiff's complaint.

13. At the request of Dr. Ferrara's attorney, the employment agreement contained specific reference to Dr. Ferrara's participation in APAA's pension and profit sharing plans. See letter dated June 15, 1982 attached to the stipulated facts as Exhibit "E".

14. The employment agreement provided that Dr. Ferrara's participation in the pension plan and the profit sharing plan was to begin on September 1, 1983.

15. The employment agreement further provided that upon three years of participation in the plans, Dr. Ferrara would become fully vested.

16. The 1976 plans, as amended in 1978, were in effect at the time Dr. Ferrara commenced employment with APAA and are the pertinent plans for determining the plaintiff's eligibility for participation in the plans.

17. APAA's pension and profit sharing plans were again amended and restated effective March 1, 1984. A copy of APAA's 1984 pension plan is attached as part of Exhibit "B" to plaintiff's complaint, and a copy of APAA's 1984 profit sharing plan is attached as part of Exhibit "C" to plaintiff's complaint.

18. The IRS approved and qualified APAA's 1984 pension and profit sharing plans.

19. In 1984, since Dr. Ferrara was already a participant under the 1976 plans, his status as a participant remained unaffected by the 1984 plans.

20. The 1984 plans effected no change in the vesting schedule implemented by the 1978 amendments, nor did they effect any material change in the pertinent vesting provisions.

21. Thus, for purposes of vesting, analysis under the 1984 plans yields the same result as under the 1978 amendments of the 1976 plans.

22. Both plans, at § 5.4 of the 1984 amendments, schedule vesting according to years of service, conferring one hundred percent (100%) vesting only after three (3) years of service.

23. A "year of service" is defined as "the computation period of twelve (12) consecutive months herein set forth, during

which an employee has at least one thousand (1,000) hours of service." (*See* § 1.46 of the 1984 plans).

24. For vesting purposes, the relevant twelve (12) consecutive month period is the plan year. (*See* plans at § 1.46).

25. The plan year begins on March 1 and ends on the last day of February. (*See* plans at § 1.34).

26. On February 26, 1985, Dr. Ferrara's employment with APAA terminated.

27. Dr. Ferrara worked at least 1,000 hours for APAA in each of the following time periods: August 1, 1982 through February 28, 1983; March 1, 1983 through February 29, 1984; and March 1, 1984 through February 26, 1985.

28. When Dr. Ferrara's employment came to an end, he requested payment of one hundred percent (100%) of the benefits under the plans.

29. APAA has refused to pay one hundred percent (100%) of the benefits claimed by Dr. Ferrara, contending that Dr. Ferrara failed to complete three (3) years of service under the plans.

After trial the parties agreed to reopen the case and stipulate to the following additional facts:

30. The funds at issue in this action are solely and entirely employer contributions to the plan.

31. During the years in question, the amount of employer contributions made to the accounts of Dr. James Esler, Plan Administrator, was the maximum annual contribution permitted by law (i.e. $30,000.00 per annum).

32. The fund in the accounts of plaintiff, Dr. Frank Ferrara, have been frozen pending the resolution of this dispute; there has been no distribution of those funds to any plan participant.

*Discussion*

As outlined in the stipulated findings of fact, plaintiff seeks to recover one hundred percent (100%) of benefits the APAA allegedly owes him under their pension and profit sharing plans. Plaintiff argues that in failing to pay the claimed benefits,

APAA breached the employment agreement, the pension and profit sharing plans, and violated ERISA.

Plaintiff brings this action under 29 U.S. C. § 1132(a)(1)(B) (1982). That provision allows, *inter alia,* a suit to recover benefits due under an employee benefit plan. We must first determine the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations.

■ In *Firestone Tire and Rubber Co. v. Richard Bruch,* — U.S. —, —, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that we should review benefit plan denials under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the plan provides the administrator with the requisite discretionary authority, we must review his decision under the arbitrary and capricious standard. Thus, the plaintiff will recover only if he can show that the denial of benefits was either a "clear error" or was "irrational." *Shiffler v. Equitable Life Assurance Society of the United States,* 838 F.2d 78, 83 (3d Cir. 1988). However, if the benefit plan gives discretion to an administrator who is operating under a possible conflict of interest, we must weigh that conflict as a factor in determining whether the administrator abused his discretion. *Bruch,* — U.S. at —, 109 S.Ct. at 956.

■ The 1984 APAA plans at § 6.2 provide that "[t]he Plan Administrator shall administer the Plan in accordance with its terms and shall have the power to determine all questions arising in connection with the administration, interpretation, and application of the Plan." Under *Bruch,* we find this language clearly gives the plan administrator sufficient discretionary authority in interpreting plan language such that we must apply the "arbitrary and capricious" standard of review. As *Bruch* instructs, in evaluating the question of the administrator's potential conflict of interest, we note that the APAA plan administrator is Dr. James W. Esler, a physician

with the APAA and a participant in both plans. The provisions of the plan do not suggest, however, that Dr. Esler operated under a significant conflict of interest. The pension plan provides that forfeitures shall not increase the benefits of any member; instead, forfeitures shall be applied in the following year to reduce the employer's contributions. (*See* 1984 pension plan at § 3.3). Plaintiff has not shown that Dr. Esler is the employer or that he indirectly would benefit from the reduction in the employer's contributions.

The profit sharing plan provides that forfeitures shall be allocated among the participants' accounts. (*See* 1984 profits sharing plan at § 3.4). The profit sharing plan further provides, however, that if a participant has already received the maximum amount allowable by law, the excess shall be distributed among the remaining participants. In the instant matter, Dr. Esler received the IRS maximum ($30,000) and could not benefit from the forfeiture. Thus, we do not find that Dr. Esler rendered his decision under any significant conflict of interest.

■ Plaintiff and defendant agree that because plaintiff commenced employment in 1982, for purposes of determining plaintiff's eligibility under the plan, we should look to the 1976 plans. Both parties also agree that because the plan administrator made his decision after 1984, for purposes of determining plaintiff's vesting rights, we should look to the 1984 plans.

In pertinent part, the 1976 plans provide as follows:

> [A]ll employees are eligible [for participation in the plan] and each shall be entitled to become Participants of this Plan after satisfying the following requirements:
> The Employee has completed 1,000 Hours of Service in the employment of the Employer within twelve (12) consecutive months commencing with the date on which the Employee shall first perform an Hour of Service for the Employer. (2.2)
> [T]he 1,000 Hours of Service shall be measured by the Plan Year. (2.6)

Plaintiff commenced employment with APAA on August 1, 1982. He completed one thousand hours of service by February 28, 1982, the final day of the plan year. Thus, plaintiff argues that under § 2.2 of APAA's 1976 pension plan, plaintiff became a participant on March 1, 1983, the anniversary date which first followed plaintiff's completion of the one thousand hours of service within the requisite twelve-month period. Both parties agree that on that same date, plaintiff became a participant in the profit sharing plan.

While defendant previously contended that the pension plan required both that the employee complete one thousand hours of service and work for twelve months before becoming a participant, defendant now agrees that under *Automated Packaging Systems, Inc. v. Commissioner of Internal Revenue*, 70 T.C. 214 (1978), the employee need only complete one thousand hours of service within the relevant twelve month period—regardless of the number of months he works. In *Automated Packaging Systems*, after a review of the legislative history, the court concluded that Congress intended that the term "year of service" mean that an "employee (participant) who has completed 1,000 hours of service during a 12-month computation period must be given credit for 1 year of service for purposes of vesting." 70 T.C. at 220. Thus, because the pension plan requires a "year of service" to become a participant, we must apply the analysis of *Automated Packaging* and find that defendant became a participant on March 1, 1983—after having completed one thousand hours within the last seven months of the plan year.

Having concluded that plaintiff became a participant in both the pension and profit sharing plans on March 1, 1983, we must determine when and to what extent his benefits vested. In pertinent part, both 1984 plans at § 5.4 provide as follows:

> The vested portion of any Participant's Account Balance ... shall be ... determined on the basis of a *Participant's number of Years of Service* (emphasis added) according to the following vesting schedule:

VESTING SCHEDULE

| YEARS OF SERVICE | PERCENTAGE |
|---|---|
| Less than 2 years | 0% |
| More than 2 but less than 3 | 50% |
| After 3 years | 100% |

Plaintiff argues that because he successfully completed three years of *service*, he is 100% vested. A "year of service" is defined as "the computation period of twelve (12) consecutive months herein set forth, during which an Employee has at least one thousand (1,000) Hours of Service." (1984 plans at § 1.46). On the contrary, defendant argues that because plaintiff failed to complete three years of *participation*, he is only 50% vested. The issue is whether the vesting calculation depends upon the number of years that a participant completes while he is a participant, or simply the number of years a participant completes, including the year or years he is not a participant. Plaintiff correctly points out that the vesting schedule does not specifically refer to a participant's years of service *as a participant*, but rather refers to simply "years of service." On the other hand, it is not unreasonable to construe "a participant's years of service" to include only the years one is a participant. The plan administrator reached that conclusion, and we will not disturb it absent a finding of arbitrariness or capriciousness.

Because the phrase taken alone is ambiguous, we must consider the rest of the document to determine if there is any evidence that can resolve the ambiguity. We do not find, however, the employment agreement relevant to our inquiry. Both parties admit that under ERISA such an agreement can not modify a plan, and while the agreement may reflect the parties' understanding of the vesting arrangement, that understanding is not relevant in determining the reasonableness of the administrator's interpretation of the plan; the language of the plan speaks for itself.

In support of the APAA interpretation of the vesting schedule, defendant argues that various parts of the agreement refer to participation rather than service. Defendant's argument begs the question. Despite the plans' references to participation, there is nothing to suggest whether, in determining vesting, the time served before participation is or is not relevant. In support of plaintiff's interpretation, we look to the definitional sections of the plan. In addition to the term "year of service," which is defined without any reference to participation, the plan defines the term, "year of participation." A year of participation is a "Plan Year during which an Employee is a Participant and completes one thousand (1,000) Hours of Service." (plans at § 1.45). Plaintiff suggests that the plan language is not ambiguous because it calculates the benefits specifically with reference to the employee's "years of service," not his "years of participation." Especially in light of the presence of the term "year of participation" in the definitional section, we must agree that if the drafters intended, the plan could have more clearly provided for vesting based on years of participation. Despite this careless drafting, however, the language, "a participant's years of service" still allows for the administrator's interpretation. "Whatever may be said of the plausibility of [the] alternative interpretation, '[i]t is for the trustees, not the courts, to choose between two reasonable alternatives.'" *Edwards v. Wilkes–Barre Publishing Co. Pension Trust*, 757 F.2d 52, 57 (3d Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 130, 88 L.Ed. 2d 107 (1985). Thus, given the reasonableness of the interpretation, we do not find the administrator's decision arbitrary and capricious.[1]

The only remaining question is whether the APAA plans violated ERISA. First, ERISA provides for minimum vesting standards which mandate that a pension plan provide for nonforfeitability of normal retirement benefits upon attainment of a normal retirement age. 29 U.S. C. § 1053(a). Second, a plan must provide

---

1. We find that defendant's good faith is supported by its willingness to pay fifty percent (50%) of the benefits under both plans when it could have made the hypertechnical argument, albeit without much chance for success, that plaintiff was two days short of completing two years of participation.

**212**

for the nonforfeitability of an employee's rights in his accrued benefit derived from his own contributions. 29 U.S.C. § 1053(a)(1). Finally, a plan must also satisfy one of three requirements which mandate nonforfeitability based upon years of service. 29 U.S.C. § 1053(a)(2)(A), (B), (C).

We find that defendant's plan did not violate ERISA. The first two requirements listed above are not at issue in this case, and the defendant's plan easily satisfies the third requirement. A plan will satisfy ERISA if an employee with at least ten years of service is 100% vested. 29 U.S.C. 1053(a)(2)(A). Under defendant's interpretation of the vesting schedules, both APAA plans provided for 100% vesting upon an employee's completion of four years of service or three years of participation. This vesting schedule is well within the requirements of ERISA and thus violates neither the letter nor spirit of the statute. *See Lojek v. Thomas,* 716 F.2d 675, 678 (9th Cir.1983) (pension plan met requirements of ERISA where plan provided vesting schedule more liberal than minimum ERISA requirements).

Thus, for the reasons adduced above, we enter a verdict and judgment for Defendant.