**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-30704
_____


N. MARK ABRAHAM, RICHARD E. ELLIS,
WILLIAM O. FLOWERS, ROBERT GIURINTANO
AND BILLY J. WALKER,

Plaintiffs-Appellants,


VERSUS


EXXON CORPORATION d/b/a EXXON COMPANY USA,
BENEFIT PLAN OF EXXON CORPORATION
AND PARTICIPATING AFFILIATES,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

June 10, 1996

Before POLITZ, Chief Judge, HIGGINBOTHAM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Plaintiffs N. Mark Abraham and others (collectively "Abraham") appeal a summary judgment in favor of Exxon Corporation and the Benefit Plan of Exxon Corporation (collectively "Exxon") on their ERISA[1] claims. We affirm in part and vacate and remand in part.

---

[1] Employee Retirement and Income Security Act of 1974.

The plaintiffs are "leased" or "special agreement" employees of Exxon who work at Exxon facilities. They are similar to ordinary Exxon employees in many ways: They report to Exxon supervisors, have Exxon business cards, and play on the Exxon softball team. Exxon is not their direct employer, however. Instead, the plaintiffs are nominally employed by unaffiliated firms that lease their services to Exxon.

Exxon maintains an ERISA plan ("the plan" or "the Exxon plan"), for the benefit of its own employees, that specifically excludes leased and special agreement employees such as the plaintiffs. The plan vests "discretionary and final authority" to determine eligibility in the plan administrator, currently J.J. Rouse.

The plaintiffs applied to Rouse for benefits and certain plan information. He determined that the plan excluded the plaintiffs from participation, denied them benefits, and failed to provide the requested information. The plaintiffs filed this ERISA suit, seeking both a determination that they were entitled to benefits from the plan and statutory penalties for Rouse's failure to provide them the requested information.

Exxon moved for summary judgment. It conceded for purposes of summary judgment that the plaintiffs were "common law employees" of Exxon under the criteria set forth in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992), but maintained that they were not entitled to relief. The district court agreed and granted summary

judgment.

## II.

As a threshold matter, we must determine whether Abraham has standing.[2] Only a "participant or beneficiary" of an ERISA plan has standing to bring a civil action under ERISA. 29 U.S.C. § 1132(a)(1). Abraham claims only to be a "participant" in the Exxon plan, so we need not consider whether he is a "beneficiary."

Whether an employee has standing as a "participant" depends, not on whether he is actually entitled to benefits, but on whether he has a colorable claim that he will prevail in a suit for benefits. ERISA itself defines a "participant" as an employee "who is or may become eligible to receive a benefit of any type from an employee benefit plan." *Id*. at § 1002(7). Those who "may become eligible" to receive benefits include anyone who "ha[s] a colorable claim that . . . he or she will prevail in a suit for benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989). Thus, Abraham may have ERISA standing even if he is ultimately not entitled to receive benefits under the plan. *See Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991) ("[A]s *Firestone* held, jurisdiction depends on an arguable claim, not on success.").

We believe that Abraham did have standing because, *ex ante*, he

---

[2] It is not evident whether the district court meant to address the standing issue. The court did determine that Abraham lacked a colorable claim to benefits, which should have been enough to deprive him of standing. It did not, however, dismiss his claim for lack of standing, but granted summary judgment instead. We therefore treat the judgment as one on the merits.

had a colorable claim that he would prevail in this suit. *Firestone* made standing turn on a claimant's likelihood of success in a lawsuit.[3] Abraham had a colorable chance of success because his argument rested squarely on *Renda v. Adam Meldrum & Anderson Co.*, 806 F. Supp. 1071 (W.D.N.Y. 1992). No other court has addressed the issues raised by *Renda*; Abraham could argue that the only federal court to address his argument had bought it. And *Renda* is not bizarre or unreasoned. Although we ultimately reject *Renda*, we do so only after devoting a considerable amount of time to explaining why it is wrong. We recognize that a claim is not colorable merely because a federal court has approved it, but we believe Abraham's reliance on *Renda* in this instance gave him a colorable claim that he would prevail in this lawsuit. That is enough for ERISA standing. *Cf. Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir. 1996) ("The requirement of a colorable claim is not a stringent one.").

### III.

Abraham argues that the district court erred by refusing to apply structural defect analysis to the plan. Structural defect analysis originated in the Ninth Circuit's Taft-Hartley Act

---

[3] *Firestone* does not distinguish between a plaintiff who claims he has been wrongly excluded under the terms of the plan as written and a plaintiff who claims the plan was improperly written to exclude him. *Firestone* itself involved palintiffs of the former sortSSplaintiffs who claimed they were wrongly denied benefits under the plan as writtenSSwhile Abraham is of the latter typeSShe argues that the plan as written wrongly excludes him. But *Firestone* gives us no basis for distinguishing between the two. The test is whether the plaintiff has a "colorable claim that . . . he or she will prevail in a suit for benefits," regardless of the type of claim he presents.

jurisprudence. Under the Act, money paid by an employer to a trust fund established by an employee representative must be used "for the sole and exclusive benefit of the employees of such employer." 29 U.S.C. § 186(c)(5). The Ninth Circuit has enforced this provision through structural defect analysis: "A pension plan is structurally deficient when it arbitrarily and unreasonably excludes a large number of participants from receiving benefits, thus failing to satisfy the 'sole and exclusive benefit' of all employees." *Phillips v. Alaska Hotel & Restaurant Employees Benefit Fund*, 944 F.2d 509, 515 (9th Cir. 1991), *cert. denied*, 504 U.S. 911 (1992).

Similarly to Taft-Hartley, ERISA mandates that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries . . . ." 29 U.S.C. § 1104(a)(1)(A)(i). Borrowing from its Taft-Hartley jurisprudence, the Ninth Circuit has enforced § 1104 through structural defect analysis. *See Siles v. ILGWU Nat'l Retirement Fund*, 783 F.2d 923, 929 (9th Cir. 1986); *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301 (9th Cir. 1983). Although we have never applied structural defect analysis to either Taft-Hartley or ERISA, Abraham would have us apply such analysis to ERISA now.

Even if structural defect analysis is the appropriate way to enforce § 1104, however, § 1104 explicitly creates a duty only for fiduciaries, and we have held that an employer does not act as a

5

fiduciary when *designing* an ERISA plan.  *See Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1524 (5th Cir. 1994) ("[A]n employer that decides to terminate, amend, or renegotiate a plan does not act as a fiduciary, *and thus cannot violate its fiduciary duty . . . .*"); *see also Hines v. Massachusetts Mut. Life Ins. Co.*, 43 F.3d 207, 210 (5th Cir. 1995).  In contrast, the Ninth Circuit cases Abraham cites as applying structural defect analysis under § 1104 have involved suits against plan administrators acting in a *fiduciary* capacity.  *See Siles*, 783 F.2d at 929; *Harm*, 701 F.2d at 1305.  Because Abraham complains only that Exxon *designed* the plan improperly, structural defect analysis is inappropriate.

IV.

Abraham contends that the exclusion of leased employees from the plan is discriminatory and contrary to the minimum participation and minimum coverage requirements of ERISA and various Treasury regulations.  He relies entirely on *Renda v. Adam Meldrum & Anderson Co.*, 806 F. Supp. 1071 (W.D.N.Y. 1992).  We find *Renda* unpersuasive and reject Abraham's argument.

*Renda* held that 29 U.S.C. § 1052(a)(1)(A) forbids employers to discriminate against leased employees when designing an ERISA plan.  That provision reads as follows:

> No pension plan may require, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates—
>
> > (i)  the date on which the employee attains the age of 21; or

6

> (ii) the date on which he completes 1 year of
> service.

Although the plain language of § 1052(a) makes no mention of leased employees, *Renda* asserts that "[s]ection 1052(a) effectively prohibits participation requirements which discriminate against certain employees such as leased employees." 806 F. Supp. at 1081.

We disagree. Section 1052(a) does nothing more than forbid employers to deny participation in an ERISA plan to an employee on the basis of age or length of service if he is at least twenty-one years of age and has completed at least one year of service. Section 1052(a) does not prevent employers from denying participation in an ERISA plan if the employer does so on a basis other than age or length of service.

*Renda* incorrectly relies on *Fernandez v. Brock*, 840 F.2d 622 (9th Cir. 1988). *Fernandez* does state in *dicta* that "ERISA requires that an employee must be eligible to participate in a plan after 'he completes 1 year of service . . . .' Similarly, ERISA requires that an employee accrue benefits after a 'year of participation' . . . ." This statement appears in the portion of the opinion setting forth the facts of the case, however, and plays no role in the holding. The statement is best read to mean that an employee is eligible to participate in a plan after completing a year of service and attaining the age of twenty-one *only* if he is not otherwise disqualified for a reason other than age or length of service. To the extent that *Fernandez*'s *dicta* does support *Renda*, we reject it.

*Renda* also relied on Treasury regulations in finding improper

7

the discrimination against leased employees.  Title 26 C.F.R. § 1.410(b)-(4)(c)(3) sets forth factors the Secretary must consider when determining whether a plan is nondiscriminatory, and *Renda* found these factors "useful for extracting subtler shades of meaning necessary to paint a more detailed portrait of an individual's substantive rights under ERISA."  806 F. Supp. at 1083. Looking to those factors, *Renda* found the exclusion of a leased employee to be improper under ERISA.

We read the function of Treasury regulations more narrowly. The regulations purport to do no more than determine whether a plan is a qualified tax plan.  Failure to meet the requirements of those regulations results in the loss of a beneficial tax status; it does not permit a court to rewrite the plan to include additional employees.  The Treasury regulations do not create substantive rights under ERISA that would permit the relief Abraham requests. It is true that ERISA does incorporate portions of the Internal Revenue Code and Treasury regulations, in some instances, but on those occasions it does so explicitly.  *See* 29 U.S.C. § 1202(c) (expressly incorporating Treasury regulations promulgated under 26 U.S.C. §§ 410(a), 411, & 412).

Nor do we find persuasive *Renda*'s reliance on *Crouch v. Mo-Kan Iron Workers Welfare Fund*, 740 F.2d 805 (10th Cir. 1984).  *Crouch* did find that an employee was entitled to participate in an ERISA plan because her exclusion would cause the plan to fail Treasury regulations.  Unlike the Exxon plan or the *Renda* plan, however, the ERISA plan in *Crouch* contained an explicit provision declaring that

8

it was to be construed to meet the requirements of an ERISA plan. Absent such a requirement in the plan itself, a court is not entitled to look to Treasury regulations to determine employee eligibility for participation in an ERISA plan. We therefore reject *Renda* and Abraham's argument.

V.

Abraham next claims that the district court erred by deferring to the administrator's interpretation of the plan. The plan vests the administrator with "discretionary and final authority to determine eligibility . . . [and] to interpret this . . . Plan." When a plan vests such discretionary authority in an administrator, we review his decisions for abuse of discretion. *Pickrom v. Belger Cartage Serv.*, 57 F.3d 468, 471 (5th Cir. 1995); *see also Firestone*, 489 U.S. at 115.

Our inquiry proceeds in two parts. First, we must determine whether the administrator's interpretation is legally correct. If it is not, we determine whether the decision constituted an abuse of discretion. *Pickrom*, 57 F.3d at 571. In deciding whether an interpretation is legally correct, we look to (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638 (5th Cir.), *clarified*, 979 F.2d 1013 (5th Cir. 1992).

The district court properly applied the law in this instance.

Looking to the *Wildbur* factors, it is apparent that the administrator construed the plan uniformly in a manner consistent with a fair reading of the plan. Furthermore, Abraham's interpretation of the plan will create unanticipated costs, as Exxon would have to provide benefits to 16,000 additional persons. Having determined that the administrator's interpretation was legally correct, the district court did not need to look further.

## VI.

Abraham contends that the plan is either ambiguous or includes him. We find no merits to his arguments, which rest on tortured constructions of the plan, defying rules of grammar and logic.

## VII.

Besides a claim for benefits, a plaintiff may also file suit under ERISA for penalties when a plan administrator "refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c)(1)(B). ERISA provides that an administrator who fails to provide such information "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." *Id*. at § 1132(c)(1). In his complaint, Abraham alleges that the plan administrator, Rouse, refused to comply with his request for information.

The district court did not specifically address the claim for

statutory penalties.  The only portion of the opinion that seems to address that claim is the portion concluding that Abraham is not a "participant or beneficiary" because he lacks a colorable claim to benefits.  We must therefore assume that the district court granted summary judgment on this claim because it believed the Abraham was not a "participant" within the meaning of ERISA and was therefore not entitled to the information he requested.

This was not a proper basis for summary judgment.  Abraham was a "participant" under ERISA because he had a colorable claim that he would prevail in this suit.  In *Firestone*, the Court held that ERISA's definition of "participant," 29 U.S.C. § 1002(7), includes anyone with a colorable claim that he will prevail in a suit for benefits, and it explained that the definition applied to claims for statutory penalties under § 1132(c)(1).  489 U.S. at 117-18.  For the reasons we discussed in part II, *supra*, Abraham was a participant under this standard and had standing to seek penalties under ERISA because the administrator failed to provide him with information.  We therefore vacate summary judgment on Abraham's claim for statutory penalties and remand so that the district court, in its discretion, may determine whether to award penalties.

We recognize that this result may appear harsh: We conclude that the Exxon plan unambiguously excludes Abraham, yet we find that the administrator may be liable for failing to provide Abraham with plan information.  We note, however, that a claimant is not entitled to penalties merely because he is a "participant."

Status as a participant is simply a threshold requiremnet a

11

plaintiff must meet before he can request penalties.  The district court has the discretion to grant or deny such a request.  In making its decision, the district court maySSand often shouldSStake into consideration the administrator's reasons for refusing to provide information.

In this case, for example, the district court might note that the terms of the plan excluded Abraham, that Abraham has standing because he relies on *Renda,* and that the administrator was probably unaware of *Renda*, a district court decision from a distant district.  From all this, the district court could conclude that the administrator acted in good faith when he refused to provide information and could decline to award penalties.  Of course, we note this only by way of example; we express no opinion as to what the district court should actually do in this case.

## VIII.

Summary judgment on all claims except the claim for statutory penalties is AFFIRMED.  Summary judgment on statutory penalties is VACATED and REMANDED.