**Dana TAIT, Plaintiff,**

v.

**BARBKNECHT & TAIT PROFIT SHARING PLAN, et al.,
Defendants.**

No. CIV.A. 3:97–CV–1011–G.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 22, 1997.

Memorandum Denying Motion to Alter or Amend March 9, 1998.

William Clay Clifton, Rohde Thomason & Bailey, Dallas, TX, for plaintiff.

Paulette Mueller, Shafer Ramsey & Mueller, Dallas, TX, for defendants Barbknecht & Tait Profit Sharing Plan, The Barbkneht Firm.

Maxel B "Bud" Silverberg, Law Office of Maxel "Bud" Silverberg, Dallas, TX, pro se.

Fred Stradley, Stradley & Wright, Dallas, TX, pro se.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court are the cross motions for summary judgment of the plaintiff Dana Tait ("Tait") and the defendants Barbknect & Tait Profit Sharing Plan ("Plan"), The Barbknect Firm, A Professional Corporation ("Barbknect Firm"), and Joseph A. Barbknect ("Barbknect," collectively with the Plan and Barbknect Firm, "defendants"). For the following reasons, the motion of Tait is granted and the motion of the defendants is denied.

## I. BACKGROUND

This case challenges the decision of an administrator of an employee pension benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* The following facts are not in dispute.

The plaintiff Tait, an attorney, began work for the defendant Barbknect Firm in December 1991.[1] Plaintiff's First Amended Complaint ("Amended Complaint") at 3. In November 1992 the Barbknect Firm adopted the Plan, effective retroactively to January 1, 1992. Defendants' Motion at 1. The Plan is an "employee pension benefit plan" established and maintained to provide retirement income to employees of the Barbknect Firm. Memorandum in Support of Plaintiff's Mo-

tion for Summary Judgment, ("Plaintiff's Brief") at 2–3. The defendant Barbknect is the Plan trustee, and the defendant Barbknect Firm is the Plan administrator. Amended Complaint at 4; Defendant's [sic] First Amended Answer and Counterclaim ("Defendants' Answer") at 3. Under the terms of the Plan, Tait became eligible to participate in the Plan in December 1992. Defendant's Motion at 4. Tait participated in the plan, and as of December 31, 1993, the balance on her account was $26,310.70. Plaintiff's Brief at 3.

In May 1994, the Barbknect firm terminated Tait's employment. Plaintiff's Brief at 2. Following termination, Tait sought to obtain a distribution of her account balance under the Plan. *Id.* at 3. The Barbknect Firm denied Tait's request, claiming that Tait was zero percent vested in the account. Defendants' Answer at 3. Under the terms of the Plan, the forfeited balance in Tait's account was allocated to other Plan participants. *Id.;* Amended Complaint at 6. Barbknect was one of four plan participants at that time. Brief and Memorandum in Support of Defendants' Response to Plaintiff's Motion for Summary Judgment ("Defendants' Response") at 3.

By a letter dated September 18, 1994, Tait requested that Barbknect provide her with copies of various Plan documents.[2] Amended Complaint at 6; Defendants' Answer at 4. By a letter dated February 1, 1995, the Barbknect Firm, through its attorney, responded to Tait's letter and delivered the documents requested. Letter from Jerry D. Mason (February 1, 1995), attached as Exhibit E to Amended Complaint. It is unclear whether Tait possessed some of the requested documents prior to this delivery. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment at 8–9.

---

**1.** The Barbknect Firm was then known as Barbknect & Tait, P.C. Motion for Summary Judgment and Brief in Support ("Defendants' Motion") at I.

**2.** Tait requested the following documents:

    1. Copy of the Plan Document and Related Trust Agreement;

    2. IRS Form 5500 for 1991, 1992, and 1993, including all accompanying schedules;

    3. Summary Annual reports for 1991, 1992, 1993; and

    4. A Statement of her accrued benefits under the Plan through the date of the request.

Letter from Dana Tait at 1–2 (September 18, 1994), attached as Exhibit D to Amended Complaint.

Tait filed this case in April 1997. She alleges that the defendants withheld Plan benefits and delayed providing Plan documents in violation of ERISA. Amended Complaint at 3–7. She seeks a declaration of her present and future rights under the Plan, recovery of the withheld benefits, imposition of the statutory penalty for failure to provide requested documents, and attorney's fees. *Id.* at 7–9. The defendants have denied that Tait is entitled to recovery and have counterclaimed seeking attorney's fees. *See generally* Defendants' Answer.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A movant for summary judgment makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the nonmovant's case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c).

Once the movant makes this showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In-

stead, the nonmovants must present evidence sufficient to support a resolution of the factual issues in their favor. *Anderson,* 477 U.S. at 257. While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), summary judgment is proper if after adequate time for discovery, the nonmovant fails to establish the existence of an element essential to its case and as to which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23.

### B. Employee Retirement Income Security Act

#### 1. Exhaustion of Administrative Remedies

The defendants first maintain that Tait cannot assert her claims here because she failed to exhaust administrative remedies prior to filing suit. Defendants' Response at 8. The Fifth Circuit has fully endorsed the jurisdictional prerequisite of exhaustion of administrative remedies for ERISA claims. *Medina v. Anthem Life Insurance Company,* 983 F.2d 29, 33 (5th Cir.), *cert. denied,* 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). Here, however, the uncontroverted evidence shows that Tait attempted to resolve her claims with the defendants before commencing this suit. *See, e.g.,* Letter from Dana Tait at 1 (September 18, 1994). Because Tait attempted to resolve her claims prior to filing suit, the court concludes that Tait has satisfied the exhaustion requirement for these claims. See *Meza v. General Battery Corporation,* 908 F.2d 1262, 1279 (5th Cir.1990).

#### 2. Denial of Benefits

Section 1132(a)(1)(B) of Title 29 of the United States Code empowers a participant or beneficiary of an ERISA governed plan to bring a civil action to recover benefits due to her under the terms of her plan. ERISA defines a "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan ...." 29 U.S.C. § 1002(7). For a former employee to establish standing as a "participant," she must have a "colorable claim that [s]he will prevail in a suit for benefits." *Abraham v. Exxon*

*Corporation,* 85 F.3d 1126, 1129 (5th Cir. 1996); accord *Firestone Tire and Rubber Company v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Because Tait's claims are solidly grounded in the ERISA interpretations of the United States Supreme Court and the Fifth Circuit Court of Appeals, this court finds that she has stated a "colorable" claim and thus has standing to proceed. See *Abraham,* 85 F.3d at 1129.

### a. *Standard of Review*

The Supreme Court has recognized that the propriety of a denial of benefits generally turns on the interpretation of the plan's terms. *Bruch,* 489 U.S. at 115. The district court reviews the interpretation of plan provisions *de novo,* unless a plan administrator or fiduciary is given discretionary authority to interpret the plan's provisions. *Id.* Discretionary authority cannot be implied. *Chevron Chemical Company v. Oil, Chemical and Atomic Workers Local Union 4–447,* 47 F.3d 139, 142 (5th Cir.1995) (citing *Cathey v. Dow Chemical Company Medical Care Program,* 907 F.2d 554, 558–59 (5th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991)). Where the terms of the plan expressly provide an administrator with interpretive authority, the court reviews those interpretations only for an abuse of discretion. *Pickrom v. Belger Cartage Service, Inc.,* 57 F.3d 468, 471 (5th Cir.1995); *Sweatman v. Commercial Union Insurance Co.,* 39 F.3d 594, 598 (5th Cir. 1994).

In this case, it is undisputed that the Plan vests the Plan administrator with discretionary interpretive authority. See Defendants' Motion at 2 (quoting American Capital Marketing, Inc. Prototype Profit Sharing/Money Purchase Plan & Trust ("Plan Document") § 2.6, attached as Exhibit 1 to Defendant's Motion). Therefore, the court reviews the defendants' interpretations of the Plan provisions under the "abuse of discretion" standard. See *Pickrom,* 57 F.3d at 471.

### b. *Application*

The review of the defendants' denial of Tait's claim to benefits proceeds in two parts: "First, we must determine whether the administrator's interpretation is legally correct. If it is not, we determine whether the decision constituted an abuse of discretion." *Abraham,* 85 F.3d at 1131 (citing *Pickrom,* 57 F.3d at 471). To determine the legal correctness of the interpretation given to the Plan, this court must consider: (1) whether the Plan has been given a uniform construction; (2) whether the interpretation is consistent with a fair reading of the Plan; and (3) whether a different interpretation will result in unanticipated costs. *Id.; Pickrom,* 57 F.3d at 471; *Chevron,* 47 F.3d at 145.

#### i. *Is The Defendants' Interpretation Legally Correct?*

The defendants denied Tait's claim for benefits because of their interpretation that Tait was zero percent vested at termination. Under this interpretation, the Plan's vesting provisions require three "Years of Service" after an employee becomes *eligible* to participate. Defendants' Motion at 7. The defendants contend that Tait did not, and could not, complete the requisite three Years of Service before her termination in May 1994 because she did not become eligible for Plan participation until December 1992. *Id.*

Neither side has presented evidence about how other employees who are similarly situated to Tait have been treated under the Plan. The court is therefore without a basis to determine whether the defendants have uniformly construed the Plan.

At the core of the present dispute is the fairness of the defendants' reading of the Plan's vesting provisions. Section 6.4(b) of the Plan Document states:

> The vested portion of any Participant's Account shall be a percentage of such Participant's Account determined on the basis of the Participant's number of Years of Service according to the vesting schedule specified in the Adoption Agreement.

Plan Document at 35, attached as Exhibit 1 to Defendants' Motion.

The vesting schedule in the Adoption Agreement specifies that employees with two

or fewer "Years of Service" are zero percent vested in their accounts and that employees with three or more "Years of Service" are fully vested. Adoption Agreement at 4, attached as Exhibit 3 to Defendants' Motion. The Plan Document defines a "Year of Service" as "the computation period of twelve (12) consecutive months, herein set forth, and during which an Employee has completed at least 1000 Hours of Service." Plan Document at 9, attached as Exhibit 1 to Defendants' Motion. For vesting purposes, the relevant "computation period" is the "Plan Year." *Id.* at 10. The "Plan Year" is a calendar year—a twelve month period beginning January 1 and ending December 31. *Id.* at 8; Adoption Agreement at 2, attached as Exhibit 3 to Defendants' Motion. An "Hour of Service" is a hour for which an employee is entitled to compensation—irrespective of whether the employment relationship has terminated—for services, vacation, sickness, holidays, *etc.* Plan Document at 4–5. These provisions, on their face, comply with ERISA's minimum vesting standards. *See generally* 29 U.S.C. § 1053; *see also* 29 C.F.R. § 2530.200b–2 (1997).

The defendants interpret the Plan documents to require a total of four Years of Service before Plan benefits become nonforfeitable—one Year of Service to become a Plan participant and three additional Years of Service to vest. Defendants' Response at 3. This interpretation is clearly at odds with a fair reading of the plan. According to the unambiguous language of the Plan, benefits vest when an employee completes three Years of Service, and an employee completes a Year of Service by working 1,000 hours during a calendar year. Nothing in the text suggests that an employee may not accrue a Year of Service for the purpose of vesting while at the same time accruing a Year of Service for the purpose of participation. To the contrary, the Adoption Agreement clearly states that an employee's effective date of participation—the date from which she accrues benefits under the Plan—is "the first

day of the Plan Year in which [s]he met the [participation] requirements." Adoption Agreement at 4, attached as Exhibit 3 to Defendants' Motion. Furthermore, a review of other Plan provisions reveals that the Plan's drafters knew how to create express timing restrictions and used this knowledge where they deemed appropriate. *E.g.*, Plan Document at 10 (requiring that the initial and subsequent yearly computation periods for the purposes of participation begin with the date on which the employee first performs an Hour of Service), attached as Exhibit 1 to Defendants' Motion. There is no such restriction here.

Tait argues that the Plan provisions entitle her to vesting credit for each of the three calendar years during which she was a Plan participant and worked 1,000 or more hours.[3] The defendants assert in conclusory fashion that "an early vesting" resulting from Tait's interpretation would create unanticipated costs for the Plan. Defendants' Motion at 8. But the defendants fail to provide any support for this contention, and the court rejects it for that reason. See *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (unsubstantiated, conclusory allegations do not provide cognizable summary judgment proof). Furthermore, the undisputed facts show that the balance in Tait's account was not withdrawn but was merely reallocated to the accounts of other Plan participants. The interpretation of the Plan provisions in question does not affect the Plan's *obligation* to pay benefits; rather, it affects *to whom* the benefits are paid. Because the potential payout under either interpretation is the same, it is difficult to see how Tait's interpretation would create any unanticipated costs for the Plan. Cf. *Batchelor v. International Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund,* 877 F.2d 441, 445 (5th Cir.1989) (finding minimal, but unanticipated, cost where interpretation would require additional payment to four individuals).

---

**3.** It is uncontested that Tait worked the requisite hours in 1992 and 1993. The defendants have challenged Tait's assertion that she worked 1,000 hours in 1994 prior to her termination, but Tait has provided evidence in the form of billing records and activity reports in support of her claim. *See* Records attached as Exhibit 3 *to* Plaintiff's Brief. The defendants have not controverted this evidence.

Because the defendants' interpretation of the Plan's vesting requirements is clearly at odds with a fair reading of the Plan's provisions,[4] and because Tait's interpretation would not—so far as the court can tell—create substantial unanticipated costs for the Plan, the court concludes that the defendants' interpretation is legally incorrect. *Abraham,* 85 F.3d at 1131; *Pickrom,* 57 F.3d at 471; *Chevron,* 47 F.3d at 145.

ii. *Did the Defendants Abuse Their Interpretive Discretion?*

▆▆▆ Having found the defendants' interpretation to be legally incorrect, the court must now determine whether the defendants abused their interpretive discretion. *Batchelor,* 877 F.2d at 445. In judging whether the defendants interpreted the Plan in good faith, the court must consider: (1) the internal consistency of the Plan under the interpretation given; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination. *Id.* A legally incorrect interpretation is actionable as an abuse of discretion only if arbitrarily or capriciously made. See *Sweatman,* 39 F.3d at 601. An interpretation is not arbitrary if it is simply a choice between permissible options. *Id.* at 602 (citing *Donato v. Metropolitan Life Insurance Company,* 19 F.3d 375, 380 (7th Cir.1994)). But an interpretation in direct conflict with the express language of the plan "is a very strong indication of arbitrary and capricious behavior." *Batchelor,* 877 F.2d at 445. Similarly, the existence of a possible conflict of interest will weigh as a factor in judging whether an abuse of discretion has occurred. *Bruch,* 489 U.S. at 115; *Chevron,* 47 F.3d at 144; *Sweatman,* 39 F.3d at 599.

▆▆▆ The defendants direct the court to the case of *Ferrara v. Allentown Physician Anesthesia Associates, Inc.,* 711 F.Supp. 206 (E.D.Penn.1989), to support their argument that there has been no abuse of discretion here. In *Ferrara,* the district court entered judgment for the defendant corporation following a non-jury trial on the plaintiff Ferrara's claim for monies allegedly owed under an employee pension plan. *Id.* at 207. At issue were the plan's vesting provisions. *Id.* at 210. The corporation interpreted the provisions to require three years of *participation* for full vesting, while Ferrara claimed the provisions required only three years of *service. Id.* at 211. The court found the provisions ambiguous and, based on that ambiguity, found that the corporation's interpretation was a permissible choice between reasonable alternatives. *Id.*

The defendants' reliance on *Ferrara* is misplaced. First, there was no conflict of interest in *Ferrara* because forfeitures inured to the benefit of the corporation or to the benefit of plan participants other than the administrator. *Id.* at 210. Here, by contrast, forfeiture of Tait's account would inure, at least in part, to the benefit of Barbknect, the Plan trustee.[5] Second, the Plan provisions at issue in this case differ from those at issue in *Ferrara.* The *Ferrara* plan operated under a two-tier vesting schedule with employees vesting fifty percent after two years and fully after three. *Id.* at 211. The present Plan operates under an all-or-nothing three year vesting schedule. In addition, the "participation" provisions in the *Ferrara* plan were worded differently and, as evidenced by the court's "participation" analysis, apparently lacked the clarifying "effective date of participation" provision found in the present Adoption Agreement. See *Ferrara,* 711 F.Supp. at 210. Finally, and most importantly, Tait wins even under the *Ferrara* analysis. The *Ferrara* court held that the vesting period began on the plaintiff's effective date of participation (March 1, 1983), rather than on the plaintiff's date of first employment (August 1, 1982). *Id.* Tait

---

4. As noted by Tait, Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment at 3–4, counsel for the Barbknect Firm, in a letter to her dated February 1, 1995, construed the vesting provisions of the Plan in the same manner as she does here.

5. The defendants attempt to avoid this obvious conflict of interest by denying that the forfeiture would inure "primarily" to the benefit of Barbknect. *See* Defendants' Answer at 3. Although there is no evidence showing the exact degree to which Barbknect would personally benefit from the forfeiture, it is undisputed that he was among the participants who would benefit from the reallocation of Tait's account.

does not claim vesting credit from date she began work for the Barbknect Firm; rather she claims credit from January 1, 1992, the effective date of her participation in the Plan. *See* Plaintiff's Brief at 3. Therefore, under the reasoning in *Ferrara*, the defendants' interpretation of the Plan to avoid Tait's claim for vested benefits is arbitrary and capricious.

A review of the factors set forth in the Fifth Circuit caselaw leads to the same conclusion. As discussed above, the defendants' interpretation of the vesting provisions is inconsistent with a fair reading of the Plan as a whole. The defendants' interpretation would also result in an artificial postponement of vesting credit in violation of Department of Labor regulations. *See* 29 C.F.R. § 2530.203–2(a) (1997). The factual circumstances also give pause. The defendants' decision to deny Tait's claim was made following Tait's involuntary termination. The forfeiture, if allowed to stand, would create a personal windfall benefitting Barbknect in some measure. On the basis of the strong evidence presented by the conflict with the express language of the Plan, the violation of administrative regulations, and Barbknect's significant conflict of interest, this court finds that the defendants abused their discretion in interpreting the Plan to deny Tait's claim for vested benefits. See *Batchelor*, 877 F.2d at 445.

### 3. *Failure to Provide Requested Documents*

■ Section 1132(c)(1) of Title 29 of the United State Code provides for the assessment of civil penalties against an ERISA plan administrator who fails to comply with a plan participant's request for plan information.[6] Tait claims that the defendants' delay in complying with her request for a copy of Plan documents subjects them to this penalty. Plaintiff's Brief at 7–10. The defendants submit that Tait was not entitled to the documents requested because she was not vested on the last day of her employment and, therefore, not a Plan "participant" within the meaning of ERISA. Defendants' Motion at 8–9. The defendants also urge that they were not required to provide the documents because the documents were in Tait's possession prior to her request. Defendants' Response at 7. In the alternative, if ERISA does require production of the documents, the defendants claim that imposition of a civil penalty is inappropriate because Tait was not prejudiced by their failure. *Id.*

■ The court must reject the defendants' first claim for two reasons. One, the court has found that the defendants abused their discretion in interpreting the Plan and that Tait's Plan benefits were vested at the time of her termination. Therefore, Tait was a Plan "participant" entitled to the requested documents under the defendants' interpretation of ERISA. Two, the defendants' interpretation of ERISA is incorrect. An individual need not be vested in plan benefits to qualify as a "participant" entitled to receive plan documents. *Abraham*, 85 F.3d at 1132. Rather, an individual need only have a "colorable claim" to plan benefits to qualify as a plan "participant." *Id.;* accord *Bruch*, 489 U.S. at 117–18; *Christopher v. Mobil Oil Corporation*, 950 F.2d 1209, 1220 (5th Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). As discussed above, Tait has a colorable claim to Plan benefits. She was, therefore, a Plan participant entitled to a copy of Plan documents. See *Abraham*, 85 F.3d at 1132.

---

6. The penalty provision states in pertinent part:

Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal ....

29 U.S.C. § 1132(c)(1). ERISA disclosure provisions require, in part, that an administrator, upon written request, furnish a plan participant with

a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

*Id.* § 1024(b)(4).

■ The court must also reject the defendants' second claim for two reasons. One, the defendants allege only that Tait had *some* of the requested documents in her possession. The defendants allege no facts that would absolve them from liability for failing to furnish the remaining documents. Therefore, the defendants would be liable for this failure, even under their interpretation of ERISA. Two, the defendants' interpretation of ERISA is incorrect. The defendants cite no authority in support of their position, and the court has found none. The plain language of the disclosure provision in question contains no exception permitting an administrator to withhold documents already in the possession of the participant requesting them. *See generally* 29 U.S.C. § 1024(b)(4). Therefore, the court concludes that Tait was entitled, upon written request, to a copy of the Plan documents.

■ In light of this conclusion, the court must now determine the propriety of assessing a civil penalty. Congress enacted the ERISA disclosure provisions to ensure that " 'the individual participant knows exactly where he stands with respect to the plan.' " *Bruch*, 489 U.S. at 118 (quoting H.R.Rep. No. 533, 93d Cong. at 11, U.S.C.C.A.N. p. 4649 (1973)). Imposition of the statutory civil penalty for an ERISA plan administrator's failure to provide requested documents is wholly within the discretion of the trial court. *Abraham*, 85 F.3d at 1132 (interpreting 29 U.S.C. § 1132(c)(1)). In making this determination, the district court should consider the administrator's reasons for refusing to provide the information. *Id.* The court may also consider any prejudice, or lack thereof, caused by the administrator's failure to respond. See *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 362 (5th Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981). But even in the absence of a showing of prejudice to the plan participant or bad faith on the part of the administrator, the district court may impose the statutory maximum penalty. See *Lee v. Benefit Plans Administrator of Armco, Inc.*, 789 F.Supp. 856, 859–60 (S.D.Tex.1992), *vacated*, 992 F.2d 324 (5th Cir.1993) (table).

In the present case, the defendants offer no reason, other than their meritless claim that Tait was not a Plan "participant," for their failure timely to provide the documents requested. Likewise, there is no evidence either supporting or refuting a claim of prejudice. Based on the defendants' failure to provide a good faith justification for their inaction, the court finds that the imposition of a statutory civil penalty is warranted. See *id.* In furtherance of the congressional intent to apply a financial stick to dilatory administrators and to provide a financial carrot for diligent plan participants, the court finds that imposition of the maximum penalty of $13,600 for the 136–day delay is warranted. See *Bruch*, 489 U.S. at 118.

### 4. Attorney's Fees and Costs

■ Tait and the defendants each request an award of attorney's fees in this case. The attorney's fees provision of ERISA permits the court to award "a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The award of attorney's fees in an ERISA action is purely discretionary. *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 832–33 (5th Cir.1996); *Todd v. AIG Life Insurance Company*, 47 F.3d 1448, 1458 (5th Cir.1995). In exercising this discretion, the court considers such factors as

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties position.

*Todd*, 47 F.3d at 1458 (quoting *Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)). If the court finds that an award of attorney's fees is warranted, it must then apply a "lodestar" calculation to determine the amount awarded. *Bellaire General*, 97 F.3d at 833 (quoting *Todd*, 47 F.3d at 1459).

774

In the present case, the first, third, and fifth *Bowen* factors weigh in favor of an award of attorney's fees to Tait. Having found that the defendants' interpretation of the Plan was affected by a conflict of interest, the court concludes that an award of attorney's fees to Tait would deter other plan fiduciaries from exercising interpretive discretion to benefit themselves at the expense of plan beneficiaries. Because Tait sought to recover only her individual benefits and the case did not involve a significant question of law regarding ERISA itself, the fourth *Bowen* factor is neutral. The second *Bowen* factor is also neutral because there is no evidence in the record regarding the ability of either side to pay a fee award. Based on an analysis of these factors, the court determines that an award of reasonable attorney's fees and costs of action in favor of Tait is appropriate. See *Todd,* 47 F.3d at 1458.

However, the court currently lacks the information necessary to make the appropriate lodestar calculation. See *id.* at 1459. To supply this information, Tait must make a motion for attorney's fees, Fed.R.Civ.P. 54(d)(2)(A), which must be filed and served no later than fourteen (14) days after entry of judgment, *id.* 54(d)(2)(B). Such motion shall be supported by affidavit(s) showing the number of hours expended on the matters at issue in this case and setting forth a reasonable hourly rate. If the defendants wish to contest the reasonableness of the fee sought by Tait, they shall respond to her motion within the time permitted by the local rules.

### III. *CONCLUSION*

For the reasons stated, the defendants' motion for summary judgment is **DENIED.** Tait's motion for summary judgment on her claim for benefits due under the Plan, for imposition of the statutory civil penalty for defendants' failure to provide requested Plan documents, and for attorney's fees and costs of action is **GRANTED,** provided that, to obtain an award of fees and costs, Tait must file and serve a properly supported motion as outlined above.[7] A response and reply thereto, as provided by the local rules of the Northern District of Texas, shall then be allowed.

No later than ten days from the date hereof, counsel for Tait shall submit a proposed form of judgment in conformity with this memorandum order.

**SO ORDERED.**

### *MEMORANDUM ORDER ON MOTION TO ALTER OR AMEND*

Before the court is the motion of the defendants Barbknecht & Tait Profit Sharing Plan, The Barbknecht Firm, a Professional Corporation, and Joseph A. Barbknecht (collectively, "defendants") to alter or amend the judgment.[1] The defendants attack this court's memorandum order entered December 23, 1997, in which the court ordered that summary judgment be granted in favor of the plaintiff Dana Tait ("Tait"). The defendants contend that the evidence did not show that Tait had worked the requisite 1,000 hours in 1994, that the denial of benefits did not constitute an abuse of discretion, and that an award of fines and attorney's fees was inappropriate. *See generally* Defendant's [sic] First Amended Brief and Memorandum in Support of Motion for New Trial/Reconsideration ("Motion").

In their summary judgment pleadings, the defendants failed to present any legally cognizable evidence that would controvert Tait's proof that she worked at least 1,000 hours in 1994.[2] Now, the defendants

7. For clarification, the court has determined herein Tait's entitlement to attorney's fees and costs, but the amount thereof is subject to determination by subsequent motion.

1. Because there was no trial in this case, the court will treat the defendants' motion as a motion under Federal Rule of Civil Procedure 59(e). See *St. Paul Mercury Insurance Company v. Fair Grounds Corporation,* 123 F.3d 336, 339 (5th Cir.1997).

2. In their motion, the defendants point to statements made by Joseph A. Barbknecht in his affidavit and in a letter to Tait as proof that Tait did not work at least 1,000 hours in 1994. Motion at 3. The statements in the Barbknecht affidavit are self-serving, conclusory, and without independent evidentiary support. As such, they do not raise an issue of material fact for trial. *Marshall v. East Carroll Parish Hospital Service District,* 134 F.3d 319, 324 (5th Cir.1998); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047–48

seek to introduce new evidence and arguments regarding Tait's billing records. *See* Motion at 3–9. When a party seeking reconsideration submits evidence not originally presented with the motion for summary judgment, the court may, in its discretion, consider or refuse to consider the submission. *Ford Motor Credit Company v. Bright*, 34 F.3d 322, 324 (5th Cir.1994). The defendants provide no excuse for their failure to present this "new" evidence in response to Tait's motion for summary judgment, and the court, in its discretion, will not reopen the case to consider it now. See *Russ v. International Paper Company*, 943 F.2d 589, 593 (5th Cir.1991) (unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying motion to reconsider), *cert. denied*, 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992).

The court addressed the defendants' arguments regarding abuse of discretion and fines and fees in its memorandum order and sees no reason to alter its conclusions regarding those issues. Accordingly, the defendants' motion to alter or amend the judgment is **DENIED.**

    **SO ORDERED.**

and n. 6 (5th Cir.1996); *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). The letter, in addition to being conclusory and unsubstantiated, contains out of court statements offered to prove the truth of the matter asserted. As such, the statements are hearsay for which the defendants offer no exception to the general rule barring admission. *See* Fed.R.Evid. 801(c), 802.