425 So.2d 326 (1982)
JOHN BAILEY CONTRACTOR, INC., Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Third Party Defendant-Third Party Plaintiff-Appellant, and
F. Miller & Sons, Inc., and Fidelity and Deposit Company of Maryland, Defendants-Third Party Defendants-Third Party Plaintiffs-Appellees.
No. 82-369.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
Rehearing Denied February 4, 1983.
Writ Granted April 5, 1983.
James B. Frederick, Jr., Baton Rouge, for defendant-appellant.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Emmett C. Sole, Lake Charles, for plaintiff-appellee.
James A. Smith of Smith & Wise, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, FORET and LABORDE, JJ.
*327 DOMENGEAUX, Judge.
Defendant, the Department of Transportation and Development (State) appeals from a judgment awarding plaintiff, John Bailey Construction, Inc. (Bailey), $30,000.00, on the basis of equitable estoppel, for work performed by Bailey as sub-contractor of defendant, F. Miller & Sons, Inc. (Miller),[1] the prime contractor for construction of a road project for the State;[2] and from a judgment in favor of Miller against it (State) on Miller's third party demand for indemnification. We reverse.
On or about August 2, 1976, the State and Miller entered into a written contract for the construction of a project known as State Project No. 31-04-13, commonly referred to as "Bayou Choupique Bridge and Approaches" located in Calcasieu Parish, Louisiana. Miller in turn entered into a sub-contract with Bailey for the performance of part of the work on the project. This contract was entered into orally on or about August 5, 1976, and though prepared in writing was never executed between the parties. However, at trial all parties stipulated that the written contract between Miller and Bailey, although never signed, represented the binding agreement between those parties. In its suit, plaintiff seeks to recover from defendants the cost of labor and materials used in construction of a detour road on the project, which was prepared to expedite construction of the project, but was not provided for in the project's plans and specifications.
The contract between the State and Miller provides for the construction of a temporary detour road in its special provisions, and in particular provides that the temporary detour road would consist of furnishing construction, embankment, base course, and surfacing for temporary detours in accordance with planned details in the following requirements which are then set forth. The plans, which are also incorporated in the contract documents, provide only for a detour road on the northern portion of the project, and do not provide the detour road in question. Miller, under the terms of its sub-contract with Bailey, contracted with Bailey for performance of certain work, which under the terms of the contract, did not include the road in question. Miller's sub-contract with Bailey further incorporates by reference all provisions of the contract Miller had with the State. The State contract and the Miller sub-contract contained provisions for claims for extra work or charges resulting from the performance of work under either the original contract between the State and Miller or the subcontract between Miller and Bailey. There is no dispute that the roadway in question, referred to as the south detour road, was not contemplated in the original plans and contract prepared by the State, nor was it contemplated in the sub-contract between Miller and Bailey.
During the course of construction on the project it became evident that some sort of decision would have to be made concerning the detoured flow of traffic while work was completed in its southern phase. An informal meeting was held between all parties herein, at which the various options available were discussed. It was concluded, not by any one individual but by everyone attending the meeting, that the safest and most expedient method to temporarily reroute traffic would be to construct the southern detour road. The meeting adjourned, and without any orders being given concerning the conclusion reached, Bailey proceeded on his own to construct the southern detour road.
The substantial issue presented on appeal was whether or not the trial court erred in finding that Bailey was entitled to recover *328 from either defendant under the theory of equitable estoppel.[3]
Our Supreme Court in American Bank and Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (La.1967) made the following observations concerning equitable estoppel:
"Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence."
The three elements required for application of equitable estoppel are: (1) A representation by conduct or work; (2) Justifiable reliance thereon; and (3) A change of position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975).
Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously. American Bank and Trust Company, supra.
Equitable estoppel has no application unless the persons invoking it relied, and had a right to rely, upon the representations or conduct of the person, or persons, sought to be estopped. Hence, there is no compliance with this rule requiring reliance upon representations, express or implied, as an element of estoppel where the persons pleading the estoppel had actual knowledge or convenient means of acquiring knowledge of the facts concerning which the representations were made. Rodden v. Davis, 293 So.2d 578 (La.App. 3rd Cir.1974).
The representations charged to defendants in the present case relates to their recommendations to construct the southern detour road and their knowledge that it was being built although not provided for in the project's specifications. Defendant State, however, contends that the construction of the road falls within the obligation of Miller and Bailey to maintain traffic during the course of construction on the project.[4] It is the State's position that it was plaintiff's responsibility to maintain an orderly flow of traffic regardless of which method was chosen. At no time had anyone informed Bailey that payment for the unprovided for detour road would be forthcoming. In fact, there was some testimony by the State engineers on the project that they informed the parties that no additional compensation would be paid for said construction.
Section 105.17 of the Standard Specifications, which forms a portion of each of the contracts (State's contract with Miller, and Miller's sub-contract with Bailey) provides as follows:
"105.17 CLAIMS FOR ADJUSTMENT AND DISPUTES
If, in any case, the contractor deems that additional compensation is due him for work or material not clearly covered in the contract or not ordered by the engineer as extra work, as defined herein, the contractor shall notify the engineer in *329 writing of his intention to make claim for such additional compensation before he begins the work on which he bases the claim. If such notification is not given and the engineer is not afforded proper facilities by the contractor for keeping strict account of actual cost as required, then the contractor hereby agrees to waive any claim for such additional compensation."... (Emphasis added)
There is no doubt that Bailey failed to notify anyone, in writing or otherwise, of his intent to seek additional compensation for the work performed until after completion of the detour road. We find that absent some representation by the defendants that Bailey would be paid for the detour road, they are not estopped from refusing said claim. Furthermore, the record clearly indicates that Bailey could have conveniently acquired information concerning payment by merely inquiring either to the representatives of Miller and/or of the State. Having failed to prove two of the essential elements of the plea of estoppel (a representation and a justifiable reliance) Bailey cannot avail himself of that doctrine.
The facts of this case are unlike those of Louisiana Paving Company, Inc. v. State, Department of Highways, 372 So.2d 245 (La.App. 1st Cir.1979) which case estopped the State from failing to comply with a verbal agreement contrary to that provided for in that project's plans and specifications. In Louisiana Paving Company, supra, the State Highway Engineer on that project informed the sub-contractor that he would be paid for the additional work performed. That verbal agreement was supplemented by written notations on the plans; by written evidence of such approval placed in the project's file in the Department's Baton Rouge office; and verified by the State's engineer who testified to making the agreement.
For the above and foregoing reasons the judgment of the district court is reversed, and it is hereby Ordered, Adjudged, and Decreed that there be judgment herein in favor of defendants, State of Louisiana, Through the Department of Transportation and Development, F. Miller & Sons, Inc., and Fidelity and Deposit Company of Maryland, and against plaintiff, John Bailey Contractor, Inc., dismissing plaintiff's demands against said defendants.
It is further Ordered, Adjudged, and Decreed that the third party demands of the State of Louisiana, through the Department of Transportation and Development, F. Miller & Sons, Inc., and Fidelity and Deposit Company of Maryland, are hereby dismissed.
Costs at trial and on appeal are to be assessed against plaintiff, John Bailey Contractor, Inc.
REVERSED AND RENDERED.
NOTES
[1] Also joined as defendant in this suit was Fidelity and Deposit Company of Maryland, Miller's surety.
[2] In addition to the principal action filed against said defendants, defendant Miller filed a third party action against the State seeking indemnity for any sums which it might be cast in judgment to the plaintiff, and the State likewise filed a third party demand against Miller. Judgment was rendered against both Miller and the State in solido, whereafter judgment was further rendered in favor of Miller and against the State on Miller's third party action.
[3] Bailey's suit also sought relief under the terms of its contract, which claim was correctly dismissed by the trial judge. The court below held that the explicit terms of the contracts did not provide for the construction of the detour road at issue. Furthermore, Bailey failed to comply with the contract provisions calling for written authorization to deviate from the plans and specifications before seeking additional compensation for extra work performed. This issue has not been raised on appeal.
[4] "MAINTENANCE OF TRAFFIC: Subsection 104.04 of the Standard Specifications is amended to include the following. The contractor shall provide for and maintain through and local traffic at all times and shall conduct his operations in such manner as to cause the least possible interference with traffic in the vicinity of this project.

In order to maintain traffic, the contractor shall construct temporary detours as provided under Item S-2 elsewhere herein.
No direct payment will be made for providing for and maintaining traffic, except payment for temporary signs, barricades, traffic markings and detours."