439 So.2d 1055 (1983)
JOHN BAILEY CONTRACTOR, INC.
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 83-C-0502.
Supreme Court of Louisiana.
October 17, 1983.
*1056 Emmett C. Sole, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, for applicant.
James A. Smith, Smith & Wise, Lake Charles, James B. Frederick, Jr., Marshall W. Wroten, Sharon F. Lyles, L. Gordon King, Asst. Gen. Counsels, Baton Rouge, for respondent.
BLANCHE, Justice.
Plaintiff sued to recover from the Department of Transportation and Development (DOTD) for the construction of a temporary detour road in connection with the construction of approaches to a new bridge on Highway 27 at Bayou Choupique in Calcasieu Parish.[1] Following trial on the merits, the judge rendered judgment in favor of Bailey for the sum of $30,000 against F. Miller & Sons, Inc., and DOTD, in solido. In his oral reasons for judgment, the trial judge found that the plaintiff could not recover under the contract, but that he was entitled to relief under the theory of equitable estoppel. On appeal, the Third Circuit reversed, holding that equitable estoppel did not apply. The issue of recovery under *1057 the contract was not raised in either this Court or the Court of Appeal. This Court, believing that a proper resolution of the case could not be made without a consideration of certain contractual provisions, ordered the parties hereto to submit supplemental briefs on the following issue:
Does the following contractual provision entitled "Maintenance of Traffic" (No. 104.04) which states in pertinent part:
"No direct payment will be made for providing for and maintaining traffic, except payment for temporary signs, barricades, traffic markings and detours." (emphasis ours).
apply so as to provide for a detour road not included in the original project plans. 425 So.2d 326.
We affirm the Third Circuit in its ruling that equitable estoppel does not apply in this case, and we also hold that the plaintiff is not entitled to recover under the terms of the contract.

FACTS
In 1976 DOTD notified general contractors that it would receive bids for the construction of approaches to a new bridge on Bayou Choupique. Included in that notification were a set of plans for the project. The plans provided, in part, for a detour road to be built on the north side of Bayou Choupique, that item being listed as S-2 as one of over fifty different line items included in the contractors' bids. The plans did not provide for a detour road on the south side of the bayou. The bid submitted by F. Miller & Sons, Inc. was accepted by DOTD and a contract accordingly entered into by those parties. The agreement consisted of the "Louisiana Standard Specifications for Roads and Bridges, dated 1971" (a document which is over 700 pages long) and over 30 pages of amendments to the Standard Specifications.
About five days after Miller entered into the contract with DOTD, it entered into an agreement with plaintiff subcontracting part of the work on the project. In this subcontract, Bailey agreed to assume all obligations owed DOTD by Miller; the sub-contract incorporated by reference all provisions of the contract Miller had with the State.
Sometime after construction had commenced, it became apparent that a decision would have to be made concerning the maintenance of traffic on the south side of the bayou. A discussion was held between the project engineer of DOTD, employees of Miller, John Bailey, and others. Three options were discussed: (1) Maintaining traffic by using one lane while working on the other, (2) widening one shoulder so two-way traffic could be maintained by using one lane and the shoulder while work proceeded on the other lane, and (3) constructing a temporary detour road. This last was generally agreed upon as the safest alternative under the particular circumstances of this project.
Bailey built the south detour road at a cost of approximately $30,000, for which he billed Miller. Both Miller and DOTD refused to pay, arguing that under the contract Bailey had the duty to maintain traffic and that this detour road fell within the scope of that duty. This suit followed wherein Bailey sought relief under the contract and, in the alternative, under the doctrine of equitable estoppel.

THE CONTRACT
In the supplemental brief ordered by this court, plaintiff contends that the last sentence of Sec. 104.04 of the contract clearly entitles him to demand direct payment for the construction of the south detour road. DOTD, on the other hand, contends that the one sentence must not be taken out of context, but must be construed in light of the remainder of Sec. 104.4, as well as with other parts of the contract as a whole. Sec. 104.04 reads in its entirety:
§ 104.04 MAINTENANCE OF TRAFFIC
Reasonable provisions for local traffic throughout the length of the project and the life of the contract must be made by the contractor, at his own expense, during construction.

*1058 When required on the plans or in the special provisions, the contractor may also be required to provide for through traffic, at his own expense, over the entire project or any designated portion thereof.
If the engineer directs special maintenance for the benefit of the traveling public, then the contractor will be paid therefor at unit prices in the contract or as provided in Subsection 104.03. The engineer will be the sole judge of work to be classified as special maintenance.

The contractor shall provide for and maintain through and local traffic at all times and shall conduct his operations in such manner as to cause the least possible interference with traffic in the vicinity of this project.
In order to maintain traffic, the contractor shall construct temporary detours as provided under item S-2, elsewhere herein.

No direct payment will be made for providing for and maintaining traffic, except payment for temporary signs, barricades, traffic markings and detours. (emphasis added.)
The entire contract in question, as mentioned earlier, consists of over 700 pages of "Standard Specifications" and 30 pages of amendments tailored to this particular project. Part of the contract is the "Schedule of Items," completed as per the Miller bid. It is important to note that the "Schedule of Items" included Item 713(1), a lump sum for "Temporary Signs and Barricades"; Item 729(14), for eight "Hazard Marker Assemblies"; Item S-3, a lump sum for "Temporary Traffic Markings"; and Item S-4, for one "Roadway Barricade."
The Civil Code mandates that all clauses or parts of contracts be interpreted "one by the other, giving to each the sense that results from the entire act." LSA-C.C. Art. 1955. Likewise, the courts have long held that,
A cardinal rule in the construction of contracts is that the contract must be viewed as a whole and, if possible, practical effect given to all its parts, according to each the sense that results from the entire agreement so as to avoid neutralizing or ignoring any of them or treating them as surplusage. (citations omitted; emphasis added.) Lambert v. Maryland Casualty Company, 418 So.2d 553, 559 (La.1982), reh. den. See also, Polozola v. Garlock, Inc., 343 So.2d 1000, (La.1977); Long-Bell Petroleum Col., Inc. v. Tritico, 216 La. 426, 43 So.2d 782 (1949), reh. den.; Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321 (1942).
Although plaintiff contends that the last sentence of Sec. 104.04 provides for direct payment for the south detour road, that sentence must be read and interpreted in a manner which would give effect and meaning to the other provisions of the contract. Courts will not impute to the parties the use of language without meaning or effect. American Mfg. Corp. v. National Union Fire Ins. Co. of Pittsburg, 203 La. 515, 14 So.2d 430 (1942), reh. den., and cases cited therein; Solomon v. Hickman, 219 So.2d 330 (La.App. 1st Cir.1969); Lambert v. Maryland Casualty Company, supra.
If the contract intended to provide for the direct payment for all detours, temporary signs, barricades, and traffic markings, then the provisions requiring the contractor to maintain traffic at his own costs would be meaningless surplusage. Considering the fact that all of the items included as exceptions in the last sentence of Sec. 104.04 were included in the "Schedule of Items" section of the contract, we conclude that it was the intent of the parties that the contractor would not receive direct payment for maintaining traffic other than for those items specifically called for and included in the "Schedule of Items."
The law also directs the courts to look to the conduct of the parties in order to interpret contractual provisions. LSA-C.C. Art. 1956.[2] In this case, the conduct of the parties in building the south detour *1059 road supports the conclusion that it was to be the contractor's own expense for maintaining traffic. It is obvious that some provision for maintaining traffic had to be made, since the entire old road bed was to be torn out and replaced, a fact which Bailey knew from the outset since that company was the one responsible for removing the old roadbed. A discussion was held to consider alternative means for maintaining traffic, and it was generally agreed that the construction of a temporary detour was the most acceptable option. Mere agreement by the project engineer with this conclusion could not have been considered an order for extra work for which Bailey would be entitled to extra compensation,[3] nor did Bailey comply with the contractual provisions regarding compensation for work or material not clearly covered in the contract or ordered by the engineer.[4]

EQUITABLE ESTOPPEL
The Court of Appeal properly held that plaintiff's reliance on the theory of equitable estoppel is unfounded. Although estoppels are not favored in the law, we have applied the doctrine of equitable estoppel when the ends of justice so require. The Third Circuit correctly applied the jurisprudentially developed doctrine of equitable estoppel, and we quote from their opinion:
[The] Supreme Court in American Bank and Trust Company v. Trinity Universal Insurance Company [251 La. 445], 205 So.2d 35 (La.1967) made the following observations concerning equitable estoppel:
Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.
The three elements required for application of equitable estoppel are: (1) A representation by conduct or work; (2) Justifiable reliance thereon; and (3) A change of position to one's detriment because *1060 of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975).
It is well-recognized that a party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel. Easterling v. Employers Liability Assurance Corp., 203 So.2d 852 (La.App. 4th Cir.1967); Shirey v. Campbell, 151 So.2d 557 (La.App. 2nd Cir.1963). In this case, DOTD's project engineer acquiesced in the construction of the south detour road, but did not specifically order or direct it. DOTD officials testified that no mention of payment was ever made because they believed the construction of the detour fell within Miller's (thus Bailey's) duty to maintain traffic. There being no order, either express or implied, to build the detour, there was no representation for Bailey to have relied upon.

DECREE
For the reasons set forth above, the judgment of the Court of Appeal is affirmed.
AFFIRMED.
DIXON, C.J., concurs.
CALOGERO, WATSON and LEMMON, JJ., dissent.
NOTES
[1] Also named defendant in the suit was F. Miller, Inc., the general contractor on the project.
[2] When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.
[3] The sections of the contract dealing with "Extra Work" for which a contractor is entitled to compensation clearly indicate that an order be issued by the project engineer and the work completed as per the specifications in that order.

§ 101.25 EXTRA WORK. An item of work not provided for in the contract as awarded but found essential to the satisfactory completion of the contract within its intended scope.
§ 104.03 EXTRA WORK. The contractor shall perform unforeseen work for which there is no price included in the contract whenever it is deemed necessary or desirable in order to complete fully the work as contemplated. Such work shall be performed in accordance with the specifications and as directed, and will be paid for as provided under Subsection 109.04.
§ 109.04 EXTRA WORK AND FORCE ACCOUNT WORK. Extra work performed in accordance with the requirements and provisions of Subsection 104.03 will be paid for at the unit prices or lump sum stipulated in the order authorizing the work, or the Department may require the contractor to do such work on a force account basis, to be compensated in the following manner:
The facts are clear that no order for the detour was given, much less any direction or specification as to how the temporary road was to be constructed. It is true that DOTD approved the road, inasmuch as they were ultimately responsible for the public safety in all phases of the project.
[4] The contract provided specific procedures for a contractor to follow if he believed he were entitled to compensation beyond that provided for in the agreement:

§ 105.17 CLAIMS FOR ADJUSTMENT AND DISPUTES. If, in any case, the contractor deems that additional compensation is due him for work or material not clearly covered in the contract or not ordered by the engineer as extra work, as defined herein, the contractor shall notify the engineer in writing of his intention to make claim for such additional compensation before he begins work on which he bases the claim. If such notification is not given and the engineer is not afforded proper facilities by the contractor for keeping strict account of actual cost as required, then the contractor hereby agrees to waive any claim for such additional compensation.