**Bobby Joe KIPER, et al**

v.

**NOVARTIS CROP PROTECTION, INC., et al**

No. CIV.A. 00–528–B–M3.

United States District Court, M.D. Louisiana.

June 7, 2002.

John P. Aydell, Jr., Baton Rouge, LA, Hunter William Lundy, Thomas P. LeBlance, David H. Hanchey, Lundy & Davis, LLP, Lake Charles, LA, for plaintiffs.

Mark Christopher Surprenant, Adams & Reese, LLP, New Orleans, LA, Warren E. Byrd, II, Thomas G. Hancuch, Adams & Reese, Baton Rouge, LA, Charles B. Wolf, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant.

### RULING

POLOZOLA, Chief Judge.

This matter is before the Court on the defendants'[1] Motion To Dismiss Counts III and IV or Alternatively For Summary Judgment[2]. Because the Court considered matters outside of the pleadings in reaching its decision, the Court will treat this motion as a motion for summary judgment.[3] For reasons which follow, the defendant's motion is GRANTED.

### I. Background

The defendants, now collectively referred to as Syngenta Crop Protection, Inc. ("Syngenta"), contracted with several engineering firms to provide services to their St. Gabriel plant. Each of the plaintiffs had previously been an employee of one of these engineering firms. At different times between 1975 and 1992, each of the plaintiffs signed separate contracts with Novartis, now Syngenta, which provided that the individual employee would be an independent contractor and would provide services directly to the defendants. These contracts essentially allowed the plaintiffs to work directly for the defendants without going through the engineering firms for whom they had previously worked. It is undisputed that the plaintiffs were never paid through the defendants' payroll system, nor were they

---

1. This case was instituted against Novartis Crop Protection, Inc., Novartis Corporation, and Novartis Pharameuticals, Inc. This company now goes by the name of Syngenta Crop Protection, Inc. The defendants will be collectively referred to as "Syngenta."

2. Rec. Doc. No. 86.

3. See Fed.R.Civ.P. 12

treated as "employees" for tax or benefits purposes.

The plaintiffs filed this suit against the defendants seeking vacation pay and bonuses under defendants' Vacation Policy and Performance Share Program, and pension and welfare benefits under the Employee Retirement Income Security Act ("ERISA").[4] Despite the very clear language of the contracts, plaintiffs contend that at all times they have been putative or "common law" employees of the defendants based on the factual circumstances surrounding their job performances. Plaintiffs also contend that defendants mischaracterized them as independent contractors in order to avoid higher tax liability.

It is defendants' position that each plaintiff individually approached the company and requested to be retained directly by the company as an independent contractor. Thus, defendants contend that the plaintiffs are equitably estopped from arguing that they are employees entitled to vacation, bonuses, and pension and welfare benefits under ERISA.

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[7] If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[8]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[9] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[10] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[11] The Court will

---

4.  29 U.S.C. § 1001, et seq.

5.  Fed.R.Civ.P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 (5th Cir.1996).

6.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). See also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir.1995).

7.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting Celotex, 477 U.S. at 323–25, 106 S.Ct. at 2553).

8.  Little, 37 F.3d at 1075.

9.  Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046–47 (5th Cir.1996).

10.  Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047.

11.  Wallace, 80 F.3d at 1048. See also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir.1996).

not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[12] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[13]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[14]

## B. Factual Findings of Plans Administrator

The Plans Administrator denied plaintiff's claims. Plaintiffs took an appeal to the Claims Decision Committee. The Court will set forth below a summary of the factual findings made by the Claims Decisions Committee in its decision on plaintiffs' appeal of the Administrator's denial of benefits. These findings concern the circumstances surrounding the formation of the contracts between plaintiffs and defendants.[15]

The Committee found that each plaintiff was formerly employed by one of the several engineering firms which Syngenta had contracted to provide services to the St. Gabriel plant. These engineering firms charged Syngenta a base hourly rate for each worker providing services which the engineering firm paid directly to the worker. The rate of pay depended on a particular worker's skills and experience. Syngenta also paid a mark-up generally between 45—50% which the engineering firm used to provide the workers with employee benefits.

The Committee further found that: (1) all of the plaintiffs individually approached the defendants at different times and requested the defendants to retain their services on an independent contractor basis; (2) plaintiffs' base hourly rates remained unchanged, but the mark-up was now being paid to the individual firm that each plaintiff established; (3) the plaintiffs' rationale was that the arrangement helped them financially because the mark-up would more than cover their self-employment taxes and the cost of providing their own benefits; and (4) the defendants' position under the new contract would be no different because their costs remained unchanged.

The Committee also found that all plaintiffs signed the "Contract for Technical Services" or similar agreement wherein they agreed to the base hourly rate and mark-up in lieu of employment benefits. The Committee further found that in the contracts the plaintiffs acknowledged their status as independent contractors in paragraph 9 which provides:

> The Contractor and the personnel furnished by Contractor to CIBA–GEIGY hereunder shall be independent contractors and not agents or employees of CIBA–GEIGY. All personnel so furnished shall be employees of the Contractor and shall not be agents or employees of CIBA–GEIGY and no representation shall be made to the contrary by Contractor or any such

**12.** *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

**13.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**14.** *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510.

**15.** The full text of the opinion referred to herein is set forth at Rec. Doc. No. 103, Exhibit 1, pp. 1–3.

personnel so furnished. All payroll taxes and withholdings shall be the responsibility of the Contractor. All payments hereunder shall be made by CIBA–GEIGY to Contractor and not to the personnel furnished hereunder.[16]

The Administrator found that none of the plaintiffs were ever paid through the company's employee payroll system or treated as employees for tax or benefits purposes, and each plaintiff invoiced Syngenta on their own business stationary for services rendered.

Finally, the Committee found that the income tax returns of at least three of the plaintiffs show that income was reported as "income from the operation of a business" on line 12 of IRS Form 1040, and that these returns show that the plaintiffs reported several substantial deductible business expenses.

After independently reviewing the record, the Court adopts the above findings as the Court's findings of fact in this case.

## C. Eligibility Under ERISA

Based on the factual findings set forth above, the Claims Decisions Committee found that the plaintiffs were estopped from arguing that they were employees rather than independent contractors. Thus, the Committee held that the plaintiffs were not eligible to receive employee benefits under ERISA.

Syngenta claims that the welfare and retirement plans (hereinafter referred to as "Plans") only cover "regular salaried employees." Syngenta contends that none of the plaintiffs were "employees carried on the payroll," which is how the Plans define a "regular employee." Syngenta also argues that even if the plaintiffs were found to be common law employees, they would not be entitled to participate in the Plans because an employer is entitled to authorize specific subgroups of employees to participate in the Plans and exclude others as long as the exclusion is not unlawfully discriminatory.[17]

In response to defendants' contentions, the plaintiffs argue that defining an "eligible employee" as an employee "on the payroll" was never expressly drafted into the Plans. Plaintiffs also argue that the Plans administrator interpreted an "eligible employee" in this manner only to relieve Syngenta of a higher tax obligation.

Syngenta contends that the term "regular" must mean something other than just "employee," or it would not have been used. Syngenta also notes that plaintiffs were labeled independent contractors at their own requests and in accordance with the contracts that each plaintiff signed.

## D. Standard of Review of Administrative Findings

The plaintiffs contend that the Committee was wrong in upholding the Claims Decisions ruling. They also contend that the proper standard of review is that the Court must make a *de novo* review of this record.

### 1. Conflict of Interest

Plaintiffs argue there is a conflict of interest within the Benefits Committee. Plaintiffs argue that because members of the Committee were all Syngenta employees, there is a conflict in their participation in these proceedings because they are self-interested and have a financial stake in the decision. Plaintiffs also allege that a conflict exists because the Committee utilized

---

**16.** See Rec. Doc. No. 99, Exhibit 11 entitled "Contract for Services, ¶ 9".

**17.** *See Abraham v. Exxon Corp.*, 85 F.3d 1126, 1130 (5th Cir.1996) ("Section 1052(a) does not prevent employers from denying participation in an ERISA plan if the employer does so on a basis other than age or length of service.")

the same attorneys to investigate the ERISA claims who also represented Syngenta against the related claims in this litigation.

In *Vega v. National Life Insurance Services, Inc.*,[18] the Fifth Circuit stated that "our Circuit has struggled with the appropriate standard of review for determinations by a self-interested administrator with discretionary authority."[19] The court further stated that "[h]aving polled the other Circuits, we reaffirm today that our approach to this kind of case is the sliding scale standard articulated in *Wildbur*. The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of a conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."[20]

The Fifth Circuit further held that "we focus on whether the record adequately supports the administrator's decision ... The advantage to focusing on the adequacy of the record, however, is that it (1) prohibits the district court from engaging in additional fact-finding and (2) encourages both parties properly to assemble the evidence that best supports their case at the administrator's level."[21]

The *Vega* court specifically held that:

when conflicted with a denial of benefits by a conflicted administrator, the district court may not impose a duty to reasonably investigate on the administrator. Under our own precedent and the Supreme Court's ruling in *Bruch*, we must give deference to the administrator's decision. That the administrator decides a claim when conflicted, however, is a relevant factor. In a situation where an administrator is conflicted, we will give less deference to the administrator's decision. In such cases, we are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. Although the administrator has no duty to contemplate arguments that could be made by claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial.[22]

■ In accordance with the rule established in *Vega* by the Fifth Circuit, this Court is not required to review the administrator's decision *de novo* simply because there may be a conflict of interest. In reviewing this case, the Court must apply a sliding scale standard to evaluate whether any conflict of interest played a role in the administrator's decision-making process.

The Court finds nothing in the record to suggest impropriety or prejudice on the part of the Administrator in interpreting the Plans. The Court also finds that plaintiffs are incorrect in contending that the Administrator had "direct financial stakes" in the outcome of the decision. The defendants have established that extending coverage to these plaintiffs would have had no effect on the other participants' benefits. Furthermore, the plaintiffs have presented no evidence or law suggesting that justice required separate attorneys to handle the administrative proceedings and this litigation. Finally, the plaintiffs have presented no evidence suggesting that these attorneys acted in bad faith in the performance of their duties in the administrative proceedings and in this Court.

---

18. 188 F.3d 287 (5th Cir.1999).

19. *Id.* at 296.

20. *Id.* at 297. (Citation omitted).

21. *Id.* at 298.

22. *Vega,* at 299. (Citation omitted).

## 2. Administrative Record

Plaintiffs have also alleged that the Committee relied on statements not in the administrative record. Plaintiffs argue that under *Vega*, the district court is bound by the evidence in the administrative record when determining the correctness of a decision. It is plaintiffs' position that the Court may not consider these statements because the Committee relied upon statements of employees that are not in the administrative record to deny plaintiffs' employee status. Plaintiffs further contend that notes of counsel are in the administrative record and should not be considered as they are not evidence nor should they be entitled to any evidentiary weight.

The *Vega* case is instructive on this point. The Fifth Circuit stated that "[a] long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator."[23] The *Vega* court further stated that,

[o]ur case law also makes clear that the plan administrator has the obligation to identify the evidence in the administrative record and that the claimant may then contest whether that record is complete. Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions. To date, those exceptions have been related to either **in-terpreting the plan** or explaining medical terms and procedures relating to the claim. Thus, evidence related to how an administrator has interpreted the terms of the plan in other instances is admissible.[24] (Emphasis added).

However, the court also stated that "the district court is precluded from receiving evidence to resolve disputed material facts—i.e., a fact the administrator relied on to resolve the merits of the claim itself."[25]

The Court has extensively reviewed the decision rendered by the Committee on plaintiffs' appeal. The Committee's decision states, "[y]ou requested, and were granted, an extension of time to file an appeal of the Claim Decisions. By letter dated August 15, 2001 ('Appeal Letter'), you appealed the Claims Decisions. No additional affidavits, statements, or other documents were submitted as part of the appeal."[26]

It is clear to the Court that the administrator identified the relevant evidence when issuing the original decision denying benefits to the plaintiffs. The appeal decision shows that the plaintiffs did not submit any documentary evidence to the contrary. The plaintiffs wanted the record only to have formal interviews and cross-examinations of themselves and the Syngenta managers. However, defendants contend that this type of adversarial process is neither required nor desired under ERISA, and that plaintiffs could have pro-

**23.** *Vega*, at 299, (citing *Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir.1999); *Schadler v. Anthem Life Insurance Company*, 147 F.3d 388, 394–95 (5th Cir.1998); *Thibodeaux v. Continental Casualty Insurance*, 138 F.3d 593, 595 (5th Cir.1998); *Barhan v. Ry–Ron, Inc.*, 121 F.3d 198 (5th Cir.1997); *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828–829 (5th Cir.1996); *Sweatman v. Commercial Union Insurance Co.*, 39 F.3d 594, 597–598 (5th Cir.1994); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1306–07 (5th Cir.1994); *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101–02 (5th Cir.1993); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 (5th Cir.1992)).

**24.** *Id.* (Citations omitted.)

**25.** *Id.*

**26.** Rec. Doc. No. 103, Exhibit 1, p. 4.

duced any contradictory evidence in the form of sworn affidavits or other documentation. The Court agrees with defendants' arguments. Thus, the Court finds that the administrator properly relied on the relevant evidence in the administrative record in interpreting the Plans.

### 3. Employment status reviewed de novo

■ Finally, the plaintiffs argue that this Court is required to review the issue of the status of the plaintiffs as either independent contractors or employees *de novo* because this is a statutory issue. *Plaintiffs rely on Penn v. Howe–Baker Engineers, Inc.*,[27] in which the Fifth Circuit held that "whether an individual is an employee or an independent contractor is a question of law involving the interpretation of ERISA.[28] Accordingly, we review it *de novo*." [29]

■ The Court acknowledges that the correct standard of review in reviewing employment status is *de novo* as stated in *Penn*. However, because the Court accepts the factual findings made by the Benefits Committee and Decision Review Panel concerning the circumstances surrounding the formation of the contracts, it is not necessary to address the question of status. The Court finds that there is sufficient evidence in the record to affirm the administrative finding that the plaintiffs are estopped from claiming to be employees; thus, the issue of status is irrelevant.

In the alternative, the Court notes that it also conducted an independent *de novo* review of the employment status issue. When doing so, the Court applied the 12 factor test set forth in *Penn* to the facts before the Court. The Court found, and Syngenta has conceded, that there are some factors that weigh in favor of the plaintiffs. However, the Court finds that after conducting a *de novo* review of all of the evidence as a whole, the plaintiffs are independent contractors and not common law employees.

### 4. Appropriate Standard of Review

In *Abraham v. Exxon Corporation*,[30] the Fifth Circuit held that "when a plan vests such discretionary authority in an administrator, we review his decisions for abuse of discretion." [31] This "[d]iscretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." [32]

The Fifth Circuit in *Abraham* further stated that "our inquiry proceeds in two parts. First, we must determine whether the administrator's interpretation is legally correct. If it is not, we determine whether the decision constituted an abuse of discretion.[33] In deciding whether an interpretation is legally correct, we look to (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." [34]

---

**27.** 898 F.2d 1096 (5th Cir.1990).

**28.** *Id.* at 1101 (Citations omitted).

**29.** *Id.*

**30.** 85 F.3d 1126 (5th Cir.1996).

**31.** *Id.* at 1131, *citing Pickrom v. Belger Cartage Service*, 57 F.3d 468, 471 (5th Cir.1995).

**32.** *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 636 (5th Cir.1992), *clarified*, 979 F.2d 1013 (5th Cir.1992), *citing Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 558 (5th Cir.1990), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

**33.** *Abraham* at 1131.

**34.** *Id., citing Wildbur* at 638.

If the court comes to the conclusion that the administrator's interpretation is incorrect, the court

> must then determine whether the administrator abused his discretion. Three factors are important in this analysis: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith. Although the fact that an administrator's interpretation is not the correct one does not in itself establish that the administrator abused his discretion, "when [his] interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." [35]

Because the Plan Administrator was vested with discretionary authority to interpret the language of the Plans, this Court must review the administrator's findings for "abuse of discretion." In doing so, the Court must first determine whether the administrator's findings were legally correct.

▇ The Court finds that the administrator gave the Plans a uniform construction. The evidence shows that the Plans have always been interpreted to exclude independent contractors from coverage. The Court also finds that the administrator's interpretation is consistent with a fair reading of the Plans. It is a reasonable interpretation of the Plans to conclude that independent contractors are not "regular employees" and that the term "regular employee" means an "employee carried on the payroll." Finally, the Court finds that

there are no unanticipated costs which would result from a different interpretation of the Plans. For the reasons set forth above, the Court finds that the administrator's interpretation was legally correct.

In the alternative, the Court will also address the factors set forth in *Wildbur* [36] that are used when determining abuse of discretion where an interpretation is found to be legally incorrect. First, the Court believes that the administrator's interpretation supports the internal consistency of the Plans because it is reasonable that independent contractors would be excluded from coverage in the future. Second, there is no evidence to suggest that this interpretation fails to follow any government regulations. Finally, the Court finds no evidence of bad faith on the part of the plan administrator in his denial of benefits to the plaintiffs.

Therefore, even if the Court found the administrator's interpretation to be legally incorrect, the Court finds that the administrator's interpretation of the Plans was not an abuse of discretion, and must be upheld.

### E. Equitable Estoppel

The defendants contend that the plaintiffs are precluded from arguing that they are common law employees based on the theory of equitable estoppel. Plaintiffs contend that consideration of equitable estoppel is not proper when reviewing denial of benefits governed by ERISA. Plaintiffs cite various Fifth Circuit cases where plaintiffs claim that the Fifth Circuit has consistently held that the theory of equitable estoppel is not cognizable within the context of claims for benefits under ERISA.[37]

---

**35.** *Id.* (Citations omitted).

**36.** *Wildbur,* at 638.

**37.** *See e.g. Williams v. Bridgestone/Firestone, Inc.,* 954 F.2d 1070 (5th Cir.1992); *Degan v.*

*Ford Motor Co.,* 869 F.2d 889 (5th Cir.1989); *Rodrigue v. Western & Southern Life Ins. Co.,* 948 F.2d 969 (5th Cir.1991); *Izzarelli v. Rexene Prods. Co.,* 24 F.3d 1506 (5th Cir.1994);

Plaintiffs' reliance on those cases is misplaced. All of those cases addressed circumstances where it was undisputed that plaintiffs were employees and covered under ERISA. Their status as an employee or independent contractor was not at issue. Those cases address the application of equitable estoppel to the oral modifications made by employers to the employees regarding plans under which the plaintiffs were already covered. Therefore, the Court must address the defendants' claim of equitable estoppel as it applies to the plaintiffs whose status as employees covered under the Plans is disputed.

In *Taita Chemical Company, Ltd. v. Westlake Styrene Corporation*,[38] the Fifth Circuit held that "[a] court interpreting a contract shall determine the 'common intent' of the parties. However, 'when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.' Therefore, when the contract is not ambiguous, this Court lacks the authority to look beyond the four corners of the document."[39]

The Fifth Circuit has adopted the Louisiana rule on equitable estoppel as defined by the Louisiana Supreme Court noting that "the Louisiana Supreme Court has defined equitable estoppel as 'the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.'"[40] This doctrine, in certain circumstances, "will prevent a party 'from taking a position contrary to his prior acts, admissions, representations, or silence"[41] Thus, equitable estoppel has three elements: "(1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance."[42] However, the court also stated that "equitable estoppel is disfavored and should only be applied to avoid injustice."[43]

■ The defendants argue that plaintiffs are estopped from claiming to be employees because they approached the company and requested a contract whereby they would be independent contractors rather than employees. Defendants further contend that plaintiffs expressly negotiated a mark-up in the regular hourly rate by 45–50%[44] that was expressly in lieu of employment benefits. Thus, it is defendants' position that plaintiffs' claims in this suit are inconsistent and contrary to the reasonable expectations of all parties to this contract. The Court agrees with defendants' contentions which are supported by the evidence presented in this case.

This Court finds that the holding in *Penn* applies in this case. In *Penn*, the Fifth Circuit held that "the intent of the

---

*Weir v. Federal Asset Disposition Ass'n.*, 123 F.3d 281 (5th Cir.1997).

38. 246 F.3d 377 (5th Cir.2001).

39. *Id.* at 386, *citing* La. Civ.Code Ann. art. 2045 and 2046; *see also Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir.1998).

40. *Id.* at 389, *citing Morris v. Friedman*, 663 So.2d 19, 25 (La.1995) (*quoting John Bailey Contractor, Inc. v. State Dep't of Transp. & Dev.*, 439 So.2d 1055, 1059 (La.1983)).

41. *Id., citing John Bailey* at 1059–60; *accord* Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975).

42. *Id., quoting John Bailey* at 1059–60.

43. *Id., See Morris*, 663 So.2d at 25–26; *John Bailey*, 439 So.2d at 1059.

44. This is the same percentage that the defendants were formerly paying the several firms by which the various plaintiffs were employed previously.

parties to enter into an independent contractor status is clear. Penn never suggests that he was coerced into signing the Design Services Agreement or that the agreement was a sham. Penn was paid as an independent contractor, and he filed his IRS forms as an independent contractor. While evidence exists to support factors that would weigh on the employee side of the scale, those factors do not under ERISA tip those scales. We therefore hold that as a matter of law, Penn was an independent contractor..." [45]

The Court finds that the theory of equitable estoppel is applicable under the facts of this case. Therefore, the Court finds that the plaintiffs are estopped from claiming that they are employees of the defendants who are entitled to benefits under the Plans. The administrative record establishes that the plaintiffs requested to be directly hired and retained by the defendants as independent contractors. The record also establishes that this arrangement did not change the financial position of the defendants in any way. The only change was that the mark-up was paid to the plaintiffs rather than the engineering firms for whom the plaintiffs originally were employed.

Furthermore, it is important to note that the plaintiffs signed these contracts with the defendants at various times between 1975 and 1992. The plaintiffs accepted their status as an independent contractor as evidenced by their tax returns and the fact that many of the plaintiffs provided their services as independent contractors to defendants for many years without ever raising this issue or disputing their status. In short, the plaintiffs requested the defendants hire them as independent contractors, received an extra mark-up under the contract, and worked for eight or more years in this capacity. Considering these facts, it is not reasonable for the plaintiffs to now claim that they are employees after over eight years of working as independent contractors and receiving the benefits thereof. To now allow the plaintiffs to claim employee status solely to get benefits under the Plans would not only be inequitable, but it would totally destroy the clear meaning of a contract voluntarily entered into by the parties.

## F.  Vacation and Bonuses

Because plaintiffs claim to be employees and not independent contractors, they also have filed a state law claim for vacation pay and bonuses. Syngenta argues that, even if plaintiffs were considered common law employees, they would still not be entitled to vacation and bonuses under Syngenta's Vacation Policy and Performance Share Program because they are not "due under the employment contract" as stated in *Rutledge v. CRC Holston, Inc.*[46]

■ For the reasons previously set forth above, the Court finds that plaintiffs are not entitled to vacation pay and bonuses because they are independent contractors and not employees. The Court also finds that plaintiffs are not entitled to vacation pay based on the signed contracts between plaintiffs and defendants which expressly stated that plaintiffs would receive only unpaid vacation.

## G.  Failure to Produce Requested Documents

Plaintiffs have requested civil penalties under 29 U.S.C. § 1024(b)(4) for the defen-

---

**45.**  *Penn*, 898 F.2d at 1103.

**46.**  425 So.2d 364, 365 (La.App. 3rd Cir.1982); see also *Huddleston v. Dillard Department Stores, Inc.*, 94–53 (La.App. 5 Cir. 5/31/94), 638 So.2d 383.

dants' alleged failure to produce certain requested documents pertaining to the annual cost of each type of welfare benefit offered to the participants, the annual cost of pension and investments savings plan benefits provided to participants, annual rates of return of each investment option available to participants, and investment options available to participants.

In *Abraham*, the Fifth Circuit held that "[b]esides a claim for benefits, a plaintiff may also file suit under ERISA for penalties when a plan administrator 'refuses to comply with a request for any information which such administrator is required ... to furnish to a participant or beneficiary.'"[47] The *Abraham* court ultimately held that "[t]he district court has the discretion to grant or deny such a request. In making it decision, the district court may—and often should—take into consideration the administrator's reasons for refusing to provide information."[48]

The Court finds that the administrator had good cause to deny plaintiffs' request to provide the information sought by plaintiffs. Defendants have shown that "plan costs and investments" is not a "document" under 29 U.S.C. § 1024(b)(4) which the administrator is required to maintain and make available. Thus, the plaintiffs' claim for civil penalties for failure to produce requested documents is denied.

### III. Conclusion

The Court finds that the plaintiffs are barred from claiming that they are employees under the theory of equitable estoppel. The Court further finds that the Plans administrator's decision is legally correct and should be affirmed. In making this decision, the Court also conducted a *de novo* review of the record. In the alternative, the Court finds that the ad-

ministrator did not abuse his discretion in making his decision on the correct interpretation of the Plans. Thus, the Court finds that the plaintiffs are not entitled to participate in the welfare and pension Plans governed by ERISA. The Court further finds that plaintiffs are not entitled to receive vacation pay and bonuses under their employment contracts and as a matter of law under the facts of this case. Finally, the plaintiffs are not entitled to civil penalties under 29 U.S.C. § 104(b)(4).

Therefore:

IT IS ORDERED that defendants' Motion to Dismiss Counts III and IV or Alternatively for Summary Judgment,[49] which the Court has converted to a motion for summary judgment, shall be GRANTED.

---

**47.** *Abraham* at 1132, *citing* 29 U.S.C. § 1132(c)(1)(B).

**48.** *Id.*

**49.** Rec. Doc. No. 86.