# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-237

MILLER PLASTERING, INC.

VERSUS

AMIGO BUILDING CORPORATION & PRIOLA CONSTRUCTION
CORPORATION

**********
APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO: 70,852
HONORABLE JOHN C. FORD,  PRESIDING
**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and James David
Painter, Judges.

**PAINTER J. CONCURS IN THE RESULT. AFFIRMED**.

Thomas P. LeBlanc
Loftin, Cain, Gabb & LeBlanc, LLC
113 Dr. Michael Debakey Drive
Lake Charles, LA 70601
(337) 310-4300
(337) 310-4400
COUNSEL FOR DEFENDANTS/APPELLANTS

Daniel G. Brenner
David L. Roberson
Bolen, Parker, Brenner, & Lee, Ltd.
P.O. Box 11590
Alexandria, LA 71315-1590
(318) 445-8236
COUNSEL FOR PLAINTIFF/APPELLEE

**COOKS, Judge**.

## FACTS

Miller Plastering, Inc. (Miller) entered into a written contract with Priola Construction Corporation (Priola) as a sub-contractor to perform sheet rock, plastering, and acrylic wall coating work on barrack buildings owned by the U.S. Army Corps of Engineers (Corps) at Fort Polk. The general contractor for the work was Amigo Building Corporation (Amigo). Amigo and Priola had a contractual agreement whereby Priola was responsible for, among other things, the type of plastering and wall finishing work it sub-contracted to Miller. Under the contract between Priola and Amigo, the costs of superintendent labor and quality control management were specifically excluded from Priola's responsibility. Nevertheless, both Amigo and Priola had employees on-site at all times while work was being performed by Miller, and both participated daily in quality control over the project including quality control over Miller's work. At no time did any representative of Priola or Amigo, ever in any way, indicate to Miller that any of its work was unacceptable or not in compliance with the Corps of Engineers' plans and specifications.

Before proceeding with its plaster and acrylic coating work, Miller prepared a sample which was approved by the Corps. After inadvertently covering over that sample, another sample was prepared by Miller and approved by the Corps. Amigo and Priola's personnel observed the daily progress of Miller's work and made no indication that the work was unacceptable to the Corps. In fact, at trial, witnesses for both Priola and Amigo testified they believed Miller's work was in compliance with the Corps' requirements, matched the approved sample, was not deficient, and did not

1

need to be redone.

After Miller fully completed the work on Building No. 2273, the inspector for the Corps rejected Miller's work and demanded it be redone. The Corps' inspector threatened if Miller caused trouble over this demand he would make it difficult for Miller to proceed on the remaining work to be done under the main contract between Amigo and the Corps. Miller, believing it was useless to argue with the Corps' quality control person, proceeded to redo the building in question.

All parties admit that Miller incurred substantial expense to redo the entire building. At no point did either Priola or Amigo object to Miller redoing the building. Apparently, none of these parties ever discussed who would bear the cost of the redo following the Corps' demand. Amigo, as general contractor, and Priola, as sub-contractor, refused to pay Miller for the cost of redoing the building. Miller filed suit against Priola and Amigo but did not include the Corps in the suit. Neither Priola nor Amigo sought to make the Corps a party to this litigation. This case previously came to our court on writs following the trial court's denial of defendants' Motion For Summary Judgment. Because the jurisdictional amount was below the required limit for jury trial the case was tried before a judge. The trial court ruled in favor of Miller and against Amigo and Priola awarding Miller damages equal to the expenses incurred for materials and labor, under the doctrine of equitable estoppel. Priola and Amigo appealed the decision asserting the trial court erred in applying the doctrine of equitable estoppel and in failing to apportion any amount of fault to the Corps and/or to Miller.

**ANALYSIS**

We review the trial court's decision under the manifest error-clearly wrong

2

standard of review. *Stobart v. State through DOTD*, 617 So.2d 880 (La.1993). In order to set aside the trial court's findings of fact we must examine the record and determine that there is no reasonable factual basis for the trial court's findings and that the trial court's findings are clearly wrong. *Id.*

We find the record supports the findings of the trial court. Amigo clearly had responsibility for quality control of all work on the project. Both Amigo and Priola had personnel on-site daily observing Miller's work and were indeed contractually obligated to provide such oversight. Miller was told the sample submitted was acceptable, and Miller proceeded to do its work in accordance with the approved sample. At no time did any employee or representative of Priola or Amigo express any concern to Miller about the quality or appropriateness of Miller's work, nor did any representative of the Corps express any dissatisfaction with Miller's work until after the work was completed on Building 2273. Both Priola and Amigo had constant contact with the Corps' quality control person, Mr. Smith. Miller reasonably relied on Amigo's and Priola's silence as approval of his original work. Further, Miller reasonably relied on Amigo's and Priola's silence as it undertook to completely redo Building 2273 at the Corps' insistence. Amigo was contractually bound in its contract with the Corps to give a satisfactory finished product subject to the Corp's approval. Priola was contractually bound to give Amigo and the Corps a satisfactory product as well. Amigo and Priola's failure to object to the Corps' demand or to Miller's efforts to comply with the Corps' demand by redoing the work, prevents them from protesting now that the subsequent work was neither authorized nor required. Amigo and Priola direct our attention to article 8 of Miller's contract, which provides:

> Warranty. Subcontractor [Miller] warrants its work against all deficiencies and defects in materials and/or workmanship and agrees to satisfy same without cost to Owner [Corps] or Contractor [Priola] for a period of one (1) year from date of Substantial Completion of the Project or per Contract Document, whichever is longer.

The contract also provides in Article 2 that the Subcontractor (Miller) was to perform and complete its work in accordance with Contract Documents and "under the general direction of Contractor (Priola)." Additionally, an addendum to the contract dated November 14, 2001 reads as follows:

> With respect to all services performed and to be performed under this agreement/contract by Miller for Priola, the latter is recognized as a statutory employer of Contractor's employees, including but not limited to the Contractor's direct employees, immediate employees and statutory employees.

Priola, by express written agreement, was the statutory employer of Miller's employees performing the work on Building 2273 and provided constant supervision over those employees and the quality of their work as Priola's contracts with Miller and Amigo required it to provide. Additionally, the president of Priola, Nicki Priola, Jr., testified it was his understanding that Section 8 of the contract with Miller means that Miller would only have to redo his work at no cost if the work was defective or deficient. He further testified Miller's work was not defective or deficient but simply was not to the Corps' satisfaction.

Though not urged in its brief, Priola asserted at oral argument that the contract between it and Miller required Miller to submit a change order before beginning the redo of building 2273. Article 4 of the noted contract states:

> **Contractor** (Priola), without nullifying Agreement, **may direct Subcontractor (**Miller**)** in writing to make changes to Subcontractor's work. Adjustment, if any, in the

contract price or contract time resulting from such changes shall be set forth in a Subcontract Change Order pursuant to the Contract Documents. (Emphasis added)

The contract places the onus on Priola to direct Miller in writing to make changes to his work. It does not speak on what Miller is required to do if Priola fails to request changes in writing (which it **may** do) but oversees the changes without objection. Further, in the contract between Priola and Amigo, Priola expressly provides in Sections 23 and 24:

Section 23. Sub-Contractor (Priola) unconditionally warrants and guarantees all labor and/or material and/or services employed and furnished by or to it in performing the work and agrees promptly to amend and make good, upon demand by the Contractor (Amigo) or Owner (Corps) and at Sub-Contractor's expense, any and all defects due to imperfect workmanship and/or materials and/or damages resulting therefrom, to the entire approval and acceptance of the Contractor and Owner and/or architect or their authorized representatives. Should the Sub-Contractor refuse or neglect to proceed at once with the correction of rejected or defective materials and/or workmanship, after receiving notice to do so, then the Contractor shall have the defects remedied or changes made at the expense of the Sub-Contractor, and the Sub-Contractor agrees to pay Contractor on demand any and all loss and/or expenses paid or incurred by Contractor in remedying such defects and/or making such changes.

Section 24**. The obligation of the Sub-Contractor to perform and complete all work covered by this Sub-Contract to the satisfaction of Contractor and Owner is absolute and without exception**. (Emphasis added)

Priola further agreed in its contract with Amigo:

Section 36. The sub-Contractor shall give its personal superintendence to the work or have a competent foreman or superintendent, satisfactory to the Contractor, on the work being performed at all times, with authority to act for it.

Section 39. Contractor shall not be liable to this Sub-Contractor, its materialmen, laborers, or sub-contractors for any damages, loss or expenses sustained by any of them resulting from acts or

5

omissions, whether or not negligent, failure to perform, delays in performance or defaults of another sub-contractor, materialman, or supplier of service in connection with the performance of any of the work covered by the General Contract.

Although it would appear from reading these provisions, Priola bears sole responsibility for the cost of the redo of building 2273, in its contractual agreements with the Corps and Priola, Amigo assumed full responsibility for quality control over the project. Neither Amigo nor Priola can rely on the provisions of Article 8 of the Miller/Priola contract when both, despite daily oversight and daily observation, remained silent and acknowledge that Miller's original work was satisfactory and not deficient.

The trial court correctly applied the law on equitable estoppel to the facts of the case. In *American Bank v. Trinity Universal Insurance Company*, 205 So.2d 35 (La.1967), our Supreme Court explained equitable estoppel:

> Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or **silence.** (Emphasis added).

This court, relying on the state supreme court's decision in *Wilkinson v. Wilkinson*, 323 So.2d 120 (La.1975), previously identified the three elements required when applying equitable estoppel as (1) A representation by conduct or work; (2) Justifiable reliance thereon; and (3) A change of position to one's detriment because of the reliance. *John Bailey Contractor, Inc. v. State of*

6

*Louisiana through DOTD*, 425 So.2d 326 (La.App. 3 Cir. 1982). We further noted in *John Bailey Contractor, 425 So.2d 326 at 328:*

> Equitable estoppel has no application unless the persons invoking it relied, and had a right to rely, upon the representations or conduct of the person, or persons, sought to be estopped. Hence, there is no compliance with this rule requiring reliance upon representations, express or implied, as an element of estoppel where the persons pleading the estoppel had actual knowledge or convenient means of acquiring knowledge of the facts concerning which the representations were made. *Rodden v. Davis*, 293 So.2d 578 (La. App. 3rd Cir. 1974).

Miller had a right to rely on the conduct and representations made by Priola and Amigo through their daily supervision and observation of Miller's work and their failure to voice any objection to the quality of Miller's work as they both admitted at trial. It was Amigo and Priola's obligation under their respective contracts to make sure the Corps was pleased with the work being done. The "Quality Control Plan" submitted by Amigo to the Corps and provided to Priola, provides at Paragraph 1:

> The purpose of the Quality Control Program is to insure conformance with the applicable specifications and drawings with respects to material, workmanship, acceptable construction, practice, finish, and functional performance on Barracks Upgrade, Fort Polk, LA per Contract Number DACA63-01-C-0012, in accordance with requirements of the contract drawings and specifications. In order to obtain this conformance, the Quality Control Staff will maintain continuous inspection and testing throughout for [sic] term of the contract. ... Constant coordination between Production and Quality Control will assure establishment of the high quality level of construction that is expected and required by the Government and Amigo's Jim Cryar, will administer the Quality Control Program at the job site.

Additionally, the Organizational Chart depicting the job site responsibilities places Joshua Sanchez, President of Amigo, at the top of the chart.

On the next level of equal responsibility, the chart lists Terrell Breaux, Superintendent (Amigo); Nickey Priola, Jr., Subcontractor (Priola); and James Cryar, Chief Quality Control (Amigo). On the next line down, the chart lists Danny Benoit, Priola's Area Superintendent. Miller cannot be faulted for assuming that its work was satisfactory as it proceeded on the project when those responsible for making that daily determination failed to discern that the Corps was not satisfied with the work for whatever reason. No one presented any evidence at trial offering any explanation as to why the Corps did not express displeasure with the work sooner nor as to whether Amigo or Priola made any effort to discern whether the Corps was satisfied with Miller's work as it progressed. As to assigning any degree of fault to the Corps, the defendants failed to put forth any evidence as to why any fault should be allocated to the Corps. In fact, we note that in both the contracts between Amigo and the Corps and Amigo and Priola, both Amigo and Priola are obligated to perform all work to the Corps' full satisfaction.

Moreover, the express contract provisions between the Corps and Amigo, and Amigo and Priola, make it clear that both have a contractual obligation to satisfy the Corps with the final product. Although the interest of Amigo and Priola may be in conflict, they have elected to "sink or swim" together in advancing a defense to Miller's claim during trial. Further, they have not argued as error on appeal the trial court's assignment of fault *vis a vis* each other, seeking review only on the court's failure to assign any fault to Miller and the Corps. The evidence introduced placed the contractual burden and cost of quality control squarely on Amigo in its contract with the Corps as the general contractor and in its contract with Priola, its subcontractor. Priola, in its contract with Miller, required that Miller's work be done "under the general direction" of Priola and specifically

provided that Miller's employees were recognized as Priola's statutory employees.

As this court has previously held:

> A person who by his deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude or course of conduct and thereby cause loss or injury to the other. *Humble Oil & Refining Company v. Baudoin*, 154 So.2d 239 (LA. App. 3 Cir. 1963); *Babin v. Montegut Insurance Agency, Inc.*, 271 So.2d 642 (La. App. 1 Cir. 1973).

*G.J. Deville Lumber Company, Inc. V. Chatelain*, 308 So.2d 428 (La.App. 3 Cir. 1975).

We conclude that there is a reasonable basis supporting the factual findings of the trial court and its application of equitable estoppel which correctly results in holding Amigo and Priola responsible for the costs of the redo of Building 2273. As to defendants' argument that plaintiff did not specially plead equitable estoppel, we find that even if plaintiff were required to specially plead it, the pleadings have been enlarged to include such a plea without timely objection prior to or during trial. *G.J. DeVille v. Chatelain*, at 432-433.

**AFFIRMED.**